IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| | : |
| LARRY FREDERICK and SHARON FREDERICK, | : |
| | : |
| | : CASE NO. 18-70870-JAD |
| Debtors. | : |
| | : Doc. No. _____ |
| M&T BANK and the UNITED STATES DEPARTMENT OF AGRICULTURE, FARM SERVICE AGENCY, | : (Related to Doc. No. 43) |
| | : |
| Movants, | : |
| | : |
| v. | : |
| | : |
| LARRY FREDERICK and SHARON FREDERICK, | : |
| | : |
| Respondents. | : |

**AGREED ORDER CONDITIONING DEBTORS' USE OF CASH COLLATERAL**

M&T Bank, the United States of America, acting through the United States Department of Agriculture, Farm Service Agency ("**FSA**"), and Larry and Sharon Frederick (the "**Debtors**", and together with M&T Bank and FSA, the "**Parties**"), by and through their undersigned counsel, hereby stipulate and agree and request that the Court approve this stipulation and enter this Agreed Order as an Order of this Court, as follows:

**RECITALS/FINDINGS OF FACT**

1. On December 20, 2018 (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the instant bankruptcy case (the "**Bankruptcy**").

2. The Debtors are acting post-petition as "debtors-in-possession" pursuant to 11 U.S.C. §§ 1107 and 1108.

3. On January 17, 2019, the Debtors filed their Schedules and Statement of Financial Affairs.

4. No creditors' committee has been appointed in the Bankruptcy.

5. On February 22, 2019, pursuant to 11 U.S.C. § 341, a meeting of creditors was conducted in the Bankruptcy (the "**341 Meeting**").

6. The Debtors' exclusivity period, pursuant to 11 U.S.C. § 1121, during which only the Debtors can file a plan of reorganization expired on April 19, 2019. The Debtors did not request any extension of the exclusivity period. To date, the Debtors have not filed a plan.

7. On February 6, 2019, FSA filed a Proof of Claim in the Bankruptcy, at claim number 11 (the "**FSA Claim**").

8. As set forth in more detail in the FSA Claim, FSA has a secured claim and a perfected first priority lien on certain personal property of the Debtors.

9. More specifically, FSA is the beneficiary and holder of two promissory notes. The first note was executed by the Debtors on September 30, 2015, and evidences a loan in the original principal amount of $244,933.78 (the "**$244,933.78 FSA Note**"). The second note was executed by the Debtors on December 22, 2015, and evidences a loan in the original principal amount of $56,400 (the "**$56,400 FSA Note**," and together with the $244,933.78 FSA Note, the "**FSA Notes**").

10. The obligations under the FSA Notes are secured by security interests in, *inter alia*, all of the Debtors' (1) crops and other plant products; (2) farm and other equipment; (3) livestock and other farm products; and (4) accounts, deposit accounts, goods, supplies, inventory, supporting

obligations, investment property, certificates of title, payment intangibles, and general intangibles, pursuant to various security agreements dated December 22, 2015; May 8, 2012; August 17, 2009; August 25, 2007; August 26, 2005; and July 21, 2003 (the "**FSA Security Agreements**").

11. The security interests granted by the FSA Security Agreements are duly perfected by, *inter alia*, properly filed UCC Financing Statements, and are first priority liens by virtue thereof.

12. According to the FSA Claim, the balance owed by the Debtors pursuant to the FSA Notes, as of the Petition Date, was $232,276.97.

13. On April 15, 2019, M&T Bank filed a Proof of Claim in the Bankruptcy, at claim number 18 (the "**M&T Bank Claim**").

14. As set forth in more detail in the M&T Bank Claim, M&T Bank has a secured claim and a perfected second priority lien (behind only FSA) on certain personal property of the Debtors, as well as a first priority mortgage lien on certain real property of the Debtors.

15. More specifically, M&T Bank is the beneficiary and holder of the following promissory notes executed by the Debtors:

    a. Term Note executed on December 30, 2015 and made effective January 5, 2016 in the original principal amount of $2,285,000 (the "**$2,285,000 Note**");

    b. Term Note executed on December 30, 2015 and made effective January 5, 2016 in the original principal amount of $850,000 (the "**$850,000 Note**");

    c. Business Access Line of Credit Note executed on December 30, 2015 and made effective January 5, 2016 in the original principal amount of $200,000 (the "**$200,000 BALOC Note**");

    d. U.S. Small Business Administration Note executed on August 1, 2016 in the original principal amount of $100,000 (the "**$100,000 SBA Note**");

    e. Term Note executed on February 28, 2017 in the original principal amount of $200,000 (the "**$200,000 Note**");

  f. Multiple Disbursement Term Note executed on July 26, 2017 in the original principal amount of $100,000 (the "**$100,000 MD Note**"); and

  g. Term Note executed on March 4, 2016 in the original principal amount of $100,000, which was subsequently amended and restated by a Term Note dated June 16, 2016, in the original principal amount of $84,266.77 (the "**$84,266.77 Note**" and together with the $2,285,000 Note, the $850,000 Notes, the $200,000 BALOC Note, the $100,000 SBA Note, the $200,000 Note, and the $100,000 MD note, the "**M&T Notes**").

16. The Debtors' obligations under the M&T Notes and related loan documents are secured by the following mortgages and real property liens:

  a. Mortgage executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600154;

  b. Assignment of Rents and Leases, executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600155;

  c. Mortgage executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600156;

  d. Assignment of Rents and Leases, executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600157;

  e. Mortgage executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600158; and

  f. Assignment of Rents and Leases, executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600159.

17. Each of the foregoing mortgages (the "**Mortgages**") and Assignments of Rents and Leases as stated in paragraph 16, secures an interest in the following real property:

    a. Tax Parcel No. 20-12-1B, a 165-acre parcel located at 1098 Frederick Road, Martinsburg, Pennsylvania 16662;

    b. Tax Parcel No. 20-9-9C, a 66-acre parcel located at 1219 Frederick Road, Martinsburg, Pennsylvania 16662; and

    c. Tax Parcel No. 20-9-8, a 62-acre parcel located at Frederick Road in Martinsburg, Pennsylvania 16662, which the Debtors schedules identify as having an address of Cove Lane

all as more fully described in the Mortgages.

18. The obligations under the M&T Notes are also secured by security interests in substantially all of the assets of the Fredericks, pursuant to various General Security Agreements, generally dated and executed as of the same date as the M&T Notes, except that pursuant to a Credit Agreement dated March 4, 2016, the parties agreed that the indebtedness associated with the $84,266.77 Note would be secured by a first priority security interest in all of Debtor's non-real estate assets pursuant to a Security Agreement executed by Debtors on December 30, 2015 and made effective January 5, 2016. All of the M&T Bank loan documents are also cross-collateralized and secure all obligations.

19. The security interests granted by the General Security Agreements are duly perfected by, *inter alia*, properly filed UCC Financing Statements.

20. The security interests granted by the General Security Agreements are first priority liens by virtue thereof and various General Subordination Agreements executed by Growmark FS, LLC, except that FSA has a first lien on certain personal property, including the livestock owned by the Fredericks.

21. The Fredericks defaulted under each of the M&T Notes as a result of, among other things, the Fredericks failure to make certain payments under the terms of the M&T Notes when due.

22. On November 29, 2018, M&T Bank filed a Complaint in Confession of Judgment against the Debtors in the United States District Court for the Western District of Pennsylvania at miscellaneous case number 318-mc-00036.

23. A judgment in the amount of $3,726,542.61, plus accruing interest and costs of suit, was entered in that case on November 30, 2018 (the "**Judgment**").

24. According to the M&T Bank Claim, the balance owed by the Debtors to M&T Bank, as of the Petition Date, was $3,745.363.62, plus interest, in accordance with the Judgment.

25. M&T Bank and FSA have valid security interests in, *inter alia*, the Debtors' farm products, livestock, contract rights and accounts, which includes the milk produced by livestock and the proceeds of milk sold by the Debtors to the Maryland and Virginia Producers Cooperative Association, Incorporated (the "**Co-Op**") or to any other party. The milk sale proceeds constitute M&T Bank's and FSA's "cash collateral" as the term is defined in section 363 of the Bankruptcy Code.

26. On April 24, 2019, M&T Bank and FSA filed a Joint Motion to Prohibit or Condition Use of Cash Collateral (the "**Joint Cash Collateral Motion**").

27. According to the FSA Claim, the estimated value of the property subject to FSA's liens was $1,000,000 as of the Petition Date.

28. According to the M&T Bank Claim, the estimated value of the property subject to M&T Bank's liens was $4,538,108.03 as of the Petition Date.

6

29. For purposes of this Agreed Order, the property values listed by the Debtors on their Schedules (ECF Doc. No. 22) shall be used for the M&T Bank and FSA collateral values as of the Petition Date except that the Debtors assert that of the 405 milking cows contemplated in the value of cows listed at ¶47 of Schedule A/B, only 285 milking cows are owned by the Debtors.

30. The Debtors have requested the authority to use cash collateral, and M&T Bank and FSA have agreed to the use of cash collateral, subject to and solely in accordance with the terms, conditions and provisions of this Agreed Order.

NOW, THEREFORE, it is hereby stipulated and agreed, and ORDERED, ADJUDGED, and DECREED, that:

### PROVISIONS/CONCLUSIONS OF LAW

1. <u>Findings and Conclusions</u>. The foregoing stipulated paragraphs and findings of fact are incorporated by reference and, to the extent appropriate, shall constitute conclusions of law. The following conclusions of law shall, to the extent appropriate, also constitute the Court's findings of fact.

2. <u>Cash Collateral</u>. Subject to and solely in accordance with the provisions of this Agreed Order, Debtors are permitted to use cash on hand, proceeds of sales of milk or other farm products or services, and other cash collections generated from the ordinary course of business and otherwise (the "**Cash Collateral**"), subject to the limitations set forth in 11 U.S.C. §§ 361 and 363 and this Agreed Order. For the avoidance of doubt, Cash Collateral includes all revenue and income of the Debtors, whether generated from milk sales, culling or other sales of livestock, payments from any subsidy or other governmental program (other than social security or disability payments), sales of crops or equipment, lease revenues and revenues or income from any other source.

3.  <u>Budget and Use of Cash Collateral</u>.  According to the Debtors, the current dairy farm operations of the Debtors consist of 285 milking cows owned by the Debtors and 120 milking cows owned by Eric Frederick, the son of the Debtors ("**Eric**").  The Debtors shall be responsible for the expenses of the farming operations attributable to their cows, and shall be entitled to the revenue generated by their cows.  Eric shall be responsible for the expenses of the operations attributable to his cows, and shall be entitled to the revenue generated by his cows.  For purposes of this Agreed Order, the allocation of expenses and revenue generated by the dairy farm operations are allocated as set forth in the budget attached as <u>Exhibit A</u> (the "**Budget**"), which reflects 70% of the projected milk sales and 70% of the shared expenses being allocated to the Debtors.  Notwithstanding anything to the contrary on the Budget, Cash Collateral shall have the broad meaning set forth in the preceding paragraph and is not limited to the "projected" revenue set forth on the Budget for illustrative purposes.  Debtors are authorized to use Cash Collateral strictly pursuant to and in accordance with the Budget, subject to the variance set forth in paragraph 4 below, during the period (the "**Term**") from June 1, 2019 through the date ending on the earliest to occur of (a) July 31, 2019, or (b) the date on which an Event of Default (as defined below) occurs subject to the notice and cure period as set forth in paragraph 10 below (a "**Termination Date**").  Upon the expiration or earlier termination of the Term (the "**Expiration Date**"), the Debtors' authority to use Cash Collateral shall immediately and automatically cease, absent further Order of this Court.

4.  <u>Compliance with Budget and 11 U.S.C. §363</u>.  Subject to and solely in accordance with the provisions of this Agreed Order, Debtors may use Cash Collateral during the Term to make payment of the necessary operating and living expenses of the kind, nature and amounts as, and only as, set forth in the Budget.  Notwithstanding the foregoing, the Debtors shall be permitted a

8

variance of 10% of the budgeted amount for each expense by category (but not in the aggregate) without seeking the consent of M&T Bank or FSA. Except for the disbursements authorized by this Agreed Order, the Debtors shall segregate and maintain all Cash Collateral in their DIP checking account at Citizens Bank. The $4,000 per month budgeted for Professional Fees for June and July shall be transmitted by Debtors in the normal course and maintained in Debtors' counsel's escrow or IOLTA account until the Court authorizes and approves fees or expenses to counsel for the Debtors in at least such amount.

5. <u>FSA Adequate Protection</u>. In consideration of the Debtors' use of Cash Collateral, as adequate protection, but without prejudice to FSA's other rights and remedies, FSA is granted the following:

   a. A security interest in all like post-petition property of the Debtors to the same extent and priority as FSA's existing liens in the Debtor's assets (the "**FSA Replacement Liens**"); (*)

   b. FSA's liens and security interests granted hereby shall be valid and fully perfected without any further action by the Debtors or FSA and without the execution or the recordation of any financing statements, security agreements, mortgages or any other documents (but FSA may, at its option, record this Agreed Order or UCC financing statements or take any other action it deems desirable to further evidence the perfection of the FSA Replacement Liens);

   c. To the extent that the FSA Replacement Liens shall fail to fully protect FSA, FSA shall be entitled to a super-priority claim pursuant to 11 U.S.C. § 507(b) in an amount equal to the diminution in value of FSA's interests suffered as a result of the Debtors' use of Cash Collateral and with priority over any and all other claims under 11 U.S.C. § 507(b) (the "**FSA Super-Priority Claim**"); and

   d. The FSA Replacement Liens, the Super Priority Claim, and all liens and existing security interests granted under the applicable loan documents shall continue in full force and effect in this and any subsequent case under the Bankruptcy Code, as provided herein, and such liens and security interests shall maintain their priority as provided for in this Agreed Order until the indebtedness of Debtors to FSA has been indefeasibly paid and satisfied or until otherwise ordered by this Court.

(*) The FSA Replacement Liens shall not attach to causes of action under Chapter 5 of the U.S. Bankruptcy Code.

9

  e. During the Term, the Debtors shall make monthly adequate protection payments to FSA (as paid by the Co-Op to FSA on behalf of the Debtors) in the amount of $2,311.

 6. <u>M&T Adequate Protection</u>. In consideration of the Debtors' use of Cash Collateral, as adequate protection, but without prejudice to M&T Bank's other rights and remedies, M&T Bank is granted the following:

  a. A security interest in all like post-petition property of the Debtors to the same extent and priority as M&T Bank's existing liens in all of the Debtor's assets (the "**M&T Replacement Liens**"); ✱

  b. M&T Bank's liens and security interests granted hereby shall be valid and fully perfected without any further action by the Debtors or M&T Bank and without the execution or the recordation of any financing statements, security agreements, mortgages or any other documents (but M&T Bank may, at its option, record this Agreed Order or UCC financing statements or take any other action it deems desirable to further evidence the perfection of M&T Replacement Liens);

  c. To the extent that the M&T Replacement Liens shall fail to fully protect M&T Bank, M&T Bank shall be entitled to a super-priority claim pursuant to 11 U.S.C. § 507(b) in an amount equal to the diminution in value of M&T Bank's interests suffered as a result of the Debtors' use of Cash Collateral and with priority over any and all other claims under 11 U.S.C. §507(b) (the "**M&T Super-Priority Claim**")

  d. The Replacement Liens, the Super Priority Claim, and all liens and existing security interests granted under the applicable loan documents shall continue in full force and effect in this and any subsequent case under the Bankruptcy Code, as provided herein, and such liens and security interests shall maintain their priority as provided for in this Agreed Order until the indebtedness of Debtors to M&T Bank has been completely paid and satisfied or until otherwise ordered by this Court.

  e. During the Term, the Debtors shall make monthly payments, on the 10th day of each month, to M&T Bank in the amount of $7,500 plus the Cash Flow Recapture, if any, which amounts may be applied by M&T Bank in its discretion in accordance with its loan documents. "Cash Flow Recapture" means 75% of the Debtors' Cash Collateral Received or earned during each of June and July that exceeds $75,355. The Cash Flow Recapture, if any, due M&T Bank for June shall be payable on or before July 15, 2019, and the Cash Flow Recapture, if any, due for July shall be payable on or before August 15, 2019, regardless of whether the Expiration Date shall have occurred.

*[Handwritten annotation at bottom: ✱ The M&T Replacement Lien shall not attach to causes of action under chapter 5 of the U.S. Bankruptcy Code.]*

10

7. <u>Additional Adequate Protection</u>. As additional adequate protection to FSA and M&T Bank, the Debtors shall (a) within 14 days of the entry of this Agreed Order, select from among the list of three auctioneers or liquidators recommended by M&T Bank to market and sell their non-exempt assets, and shall immediately share with FSA and M&T Bank the selected auctioneer or liquidator's recommended plan for marketing and selling the assets and thereafter promptly meet and confer with FSA and M&T Bank to discuss the commercially best means for implementing the sale process with the goal toward maximizing the return; (b) the Debtors shall timely file with the Court all motions and take all other steps necessary to engage the selected auctioneer or liquidator and to implement and consummate the sale process as agreed by the Parties; and (c) maintain adequate insurance on their assets and operations, in amounts, types and with carriers that are reasonably satisfactory to M&T Bank and FSA. Evidence of such insurance and confirmation that FSA and M&T Bank are named as loss payees and additional insureds on such insurance, as their interests may appear, shall be provided to M&T Bank and FSA within 10 days of the date of this Agreed Order.

8. <u>Reporting Requirements</u>. The Debtors shall timely file all Monthly Operating Reports ("**MORs**") required by the Court, the U.S. Trustee or applicable law or rule, and shall serve a copy on counsel for FSA and counsel for M&T Bank. In addition to all other required information and disclosures, the Debtors shall list and itemize in the MORs all income and revenue from whatever source and all disbursements (including payee, amount and Budget category), and shall contain a comparison of actual performance to the Budget and a calculation of the Cash Flow Recapture.

9. <u>Events of Default</u>. The occurrence of any of the following events, unless waived by M&T Bank and FSA in writing, shall constitute an event of default (each individually, an "**Event of Default**" and collectively, the "**Events of Default**"):

- a. Violation of any of the terms of this Agreed Order;

- b. Failure to timely make any of the monthly payments due to FSA or to M&T Bank under this Agreed Order;

- c. Debtors' failure to comply with the Budget, subject to the variance as set forth in paragraph 4 above (if applicable) and any further variance agreed to in writing by M&T Bank and FSA (it being understood that M&T Bank and FSA are under no obligation to agree to any further variance);

- d. Conversion of Debtors' Bankruptcy to a case under Chapter 7 of the Bankruptcy Code;

- e. The appointment of a trustee pursuant to § 1104(a)(1) or (a)(2) of the Bankruptcy Code in Debtors' Bankruptcy;

- f. The appointment of an examiner in Debtors' Bankruptcy;

- g. Dismissal of Debtor's Bankruptcy;

- h. The entry of any order materially modifying, reversing, revoking, staying, rescinding, vacating, or amending this Agreed Order without the express prior written consent of M&T Bank and FSA, in their sole and absolute discretion;

- i. The failure of Debtors to provide to FSA the continuing FSA Replacement Liens and the FSA Super Priority Claim as part of the adequate protection of FSA's interests;

- j. The failure of Debtors to provide to M&T Bank the continuing M&T Replacement Liens and the M&T Super Priority Claim as part of the adequate protection of M&T Bank's interests;

- k. The failure of Debtors to file timely any monthly operating report in this case as required by the Court, the U.S. Trustee or applicable law or rule and to serve M&T Bank's counsel and FSA's counsel with a copy;

- l. The filing by Debtor of any motion, or other contested matter that could reasonably be expected to result in material impairment of either M&T Bank's rights or FSA's rights under the applicable loan documents, as

      modified by this Agreed Order, or the M&T Bank Judgment, including, but not limited to, any motion to surcharge M&T Bank, FSA, or any of their collateral under section 506(c) of the Bankruptcy Code or otherwise, or any motion or pleading seeking to challenge M&T Bank's or FSA's pre-petition liens, the Replacement Liens, the Super Priority Claim, or any other adequate protection granted to M&T Bank or FSA, or any motion or application which seeks approval for or allowance of any claim, lien, security interest ranking equal or senior in priority to the claims, liens and security interests granted to M&T Bank and FSA under this Agreed Order, or the applicable loan documents, including the Replacement Liens, and the Super Priority Claims, or any such equal or prior claim, lien, or security interest shall be established in any other manner;

  m.  This Agreed Order shall cease to be in full force and effect at any time after the date of entry thereof by the Court;

  n.  Entry of an order without M&T Bank's and FSA's consent granting any other super-priority claim or lien equal or superior to that granted to M&T Bank and FSA, prior to full and indefeasible repayment of the FSA Claim or the M&T Bank Claim, as applicable;

  o.  Any representation or warranty made by Debtors (or either of them) in any agreement, exhibit, certificate, instrument or financial statement or other statement contemplated by or made or delivered pursuant to or in connection with this Agreed Order or any subsequent Order, shall prove to have been incorrect in any material respect when deemed to be effective;

  p.  The sale of any of Debtors' assets outside the ordinary course of business without the prior written consent of M&T Bank and FSA, in their sole discretion, and the prior approval of the Bankruptcy Court;

  q.  Any of the Cash Collateral shall be used to pay the debts of any other person, including Eric, or to pay any prepetition debt, except as expressly authorized in this Agreed Order or by other order of this Court; and

  r.  The Debtors shall fail to pay when due any tax due to any governmental entity, including, but not limited to, income and withholding taxes and other trust fund payments, or shall fail to pay when due any fee payable under 28 U.S.C. §1930.

10.  <u>Notice of Default</u>. Upon the occurrence of an Event of Default, M&T Bank or FSA shall provide written notice by email to counsel for the Debtors at the following email addresses: rlampl@lampllaw.com and rcooney@lampl.com. Except for an Event of Default under paragraph 9.b above, the Debtors shall have ten (10) days from the receipt of said notice to cure the default

13

prior to a termination taking effect as set forth in paragraph 3 above. The failure of either FSA or M&T Bank to provide notice of any Event of Default shall not constitute a waiver of any other right or remedy under this Agreed Order or otherwise or of the right to provide notice for any additional or future Event of Default.

11. <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Agreed Order, including, but not limited to: (a) permit the Debtors to grant the FSA and M&T Bank Replacement Liens; (b) permit the Debtors to perform such acts as FSA and M&T Bank may reasonably request to assure the perfection and priority of the Replacement Liens; and (c) authorize the Debtors to grant the other adequate protection described herein to FSA and M&T Bank and to pay, and for FSA and M&T Bank to retain and apply, payments made in accordance with the terms of this Agreed Order.

12. <u>Binding Effect</u>. The provisions of this Agreed Order shall be binding upon and inure to the benefit of the Debtors, FSA and M&T Bank, as well as their respective successors and assigns, including any trustee appointed or elected in this Bankruptcy or any Chapter 7 case.

13. <u>Reservation of Rights</u>. This Agreed Order is without prejudice to (i) M&T Bank's and FSA's right to seek relief from the automatic stay for an immediate turnover of all Cash Collateral or any other relief; (ii) M&T Bank's and FSA's right to credit bid in accordance with 11 U.S.C. §363(k) in connection with any sale of their collateral; (iii) the rights, remedies, claims and defenses of all persons and entities relating to the use of any cash collateral prior to the effective date of this Agreed Order; and (iv) all other rights and remedies of the Parties except as expressly set forth in this Agreed Order.

**STIPULATED, AGREED TO and RESPECTFULLY SUBMITTED TO THE COURT BY:**

/s/ Robert O Lampl
Robert O Lampl
Pa I.D. ~~~~~~
Ryan Cooney
Pa I.D. 31213
Robert O Lampl Law Offices
223 Fourth Ave
Pittsburgh, PA 15222
Phone: (412) 392-0330
Fax:    (412)
E-mail: rol@lampllaw.com
        rcooney@lampllaw.com>

Counsel for the Debtors, Larry and Sharon Frederick

/s/ William E Kelleher Jr
William E. Kelleher, Jr.
Pa I.D. 30747
COHEN & GRIGSBY, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Phone: (412) 297-4703
Fax:    (412) 209-1997
E-mail: wkelleher@cohenlaw.com

Counsel for M&T Bank


SCOTT W. BRADY
United States Attorney

/s/ Jill Locnikar
JILL LOCNIKAR
Assistant United States Attorney
Joseph F. Weis, Jr. United States Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
Tel: (412) 894-7429
Email: jill.locnikar@usdoj.gov
PA ID No. 85892

Counsel for United States Department of Agriculture, Farm Servicing Agency

15

**CONSENTED AND AGREED TO:**

_Eric Frederick_ (signature)    Date: 6-11-19
Eric Frederick

_Jennifer Frederick_ (signature)    Date: 6-11-19
Jennifer Frederick

SO ORDERED, as of this _____ day of June, 2019:

_____ sjk
JEFFERY A. DELLER
United States Bankruptcy Judge

3015776

FILED
6/11/19 12:48 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# Exhibit A

# Budget

| | JUNE | JULY | COMMENTS |
|---|---|---|---|
| Hauling: | $5,770 | $5,770 | |
| FSA: | $2,311 | $2,311 | |
| Marketing: | $567 | $567 | |
| National Dairy: | $208 | $208 | |
| CWT: | $166 | $166 | |
| Allied: | $415 | $415 | |
| Bedding: | $1,102 | $1,102 | |
| Feed: | $19,499 | $19,499 | |
| Repairs: | $5,455 | $5,455 | |
| Breeding: | $467 | $467 | |
| Seeds & Plants/Fertilizer: | $13,000 | $0 | |
| Supplies (Livestock): | $740 | $740 | |
| Supplies (General): | $973 | $973 | |
| Vet & Medicine: | $263 | $263 | |
| Gasoline, Fuel & Oil: | $3,552.50 | $3,552.50 | |
| Repairs (Real Estate): | $1,000 | $1,000 | |
| Vehicle (Truck): | $500 | $500 | |
| Office Expenses: | $100 | $100 | |
| Advertising | $100 | $100 | |
| Misc. (Hoof Trimming): | $906 | $906 | |
| Employer Payroll Expense: | $945 | $945 | |
| Insurance: | $2,156 | $2,156 | |
| Utilities (Electric): | $3,153 | $3,153 | |
| Utilities (telephone): | $151 | $151 | |
| Payroll: Farm Help | $3,920 | $3,920 | Non-Frederick Payroll |
| Payroll: Eric | $1,750 | $1,750 | 70% of Eric's Wages ($1,250 X 2 X .7) |
| Rent – Lease of Real Estate: | $700 | $1,800 | |
| 943 Tax - | $1,400 | $1,400 | |
| Real Estate Taxes - | $0 | $15,000 | |
| Personal Expenses: | | | |
| Car payment | $0 | $0 | |
| Cable/Internet | $325 | $325 | |
| Phone | $250 | $250 | |
| Health Insurance | $850 | $850 | |
| Life Insurance | $250 | $95 | |
| Personal Fuel | $400 | $400 | |
| Food | $700 | $700 | |
| House (BB&T) | $0 | $0 | |
| HELOC | $0 | $0 | |
| Personal Misc. | $1,000 | $1,000 | |
| SUBTOTAL | $75,045 | $77,990 | |
| | | | |
| U.S. Trustee Fees | $650 | 0 | |
| Professional Fees (Lampl) | $4,000 | $4,000 | |
| M&T Bank | $7,500 | $7,500 | See below |
| SUBTOTAL | $12,150 | $11,500 | |
| | | | |
| TOTAL EXPENSES | $87,195 | $89,490 | |
| | | | |
| PROJECTED REVENUE | $75,355 | $75,355 | Debtor milk revenues = 70% of actual payments from Co-Op + $2,291 deducted FSA payment for Eric; 60% of all "Cash Collateral" over $75,355 paid to M&T Bank as additional adequate protection and 40% of such excess shall be set aside for Professional Fees or Debtors (subject to their agreement and court approval) |
| | | | |
| SURPLUS/(DEFICIT) | ($11,840) | ($14,135) | |