**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| LARRY FREDERICK and SHARON ) | |
| FREDERICK, ) | |
| ) | CASE NO. 18-70870-JAD |
| Debtors. ) | |
| ) | Doc. No. _____ |
| M&T BANK ) | |
| ) | Hearing Date: Tuesday, July 14, 2020 at |
| Movant, ) | 10:00 a.m. |
| ) | |
| v. ) | Response Deadline: June 29, 2020 |
| ) | |
| LARRY FREDERICK and SHARON ) | |
| FREDERICK, ) | |
| ) | |
| Respondents. ) | |

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

M&T Bank, by and through its undersigned counsel, submits this Motion for Relief from the Automatic Stay (this "Motion"), and in support hereof states as follows:

**INTRODUCTION**

1.  Between 2015 and 2017, M&T Bank extended several loans to the Debtors. As a result of the Debtors' defaults under the various notes evidencing those loans, M&T Bank confessed judgment against the Debtors in November 2018. Shortly thereafter, the Debtors commenced this bankruptcy case. The case has been pending for nearly a year and a half. In that time, the Debtors have neither proposed a plan of reorganization, nor arranged for a sale of assets on terms acceptable to their secured creditors. The case has stagnated, and the value of M&T Bank's collateral has decreased precipitously to the point that whatever equity may have existed for the estate has completely diminished. Moreover, it appears the Debtors' prospects for completing an effective reorganization are slim to none. For the reasons described in more detail

below, the Court should grant M&T Bank relief from the automatic stay so it may pursue its rights and remedies against its collateral.

## PARTIES

2. M&T Bank ("M&T Bank"), sometimes referred to as Manufacturers and Traders Trust Company, is a New York banking corporation with its principal place of business at One M&T Plaza, Buffalo, New York 14202 and with offices at 301 West Plank Road, Altoona, Pennsylvania 16602.

3. Larry Frederick and Sharon Frederick (the "Fredericks" or "Debtors") are husband and wife, and Pennsylvania residents with an address of 1098 Frederick Road, Martinsburg, Pennsylvania 16662.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.

5. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

7. On December 20, 2018 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the instant case.

8. The Debtors are acting post-petition as "debtors-in-possession" pursuant to 11 U.S.C. §§ 1107 and 1108.

9. No creditors' committee has been appointed in this case.

10. The Debtors' exclusivity period, during which only the Debtors could file a plan of reorganization, expired on April 19, 2019. The Debtors did not request any extension of the exclusivity period. To date, the Debtors have not filed a plan.

11. On April 15, 2019, M&T Bank filed a Proof of Claim in this case, at claim number 18 (the "M&T Bank Claim"). A true and correct copy of the M&T Bank Claim is attached as **Exhibit 1** and incorporated by reference. As indicated below, copies of the M&T Bank loan documents are attached to the Proof of Claim.

12. As set forth in more detail in the M&T Bank Claim, M&T Bank has a secured claim with a first priority mortgage lien on certain real property of the Debtors and a perfected second priority lien (behind only the United States Department of Agriculture, Farm Service Agency ("FSA")) on certain personal property of the Debtors.

13. More specifically, M&T Bank is the beneficiary and holder of the following promissory notes executed by the Debtors:

    a. Term Note executed on December 30, 2015 and made effective January 5, 2016 in the original principal amount of $2,285,000 (the "$2,285,000 Note" and the loan made pursuant thereto is designated as "Loan 42");

    b. Term Note executed on December 30, 2015 and made effective January 5, 2016 in the original principal amount of $850,000 (the "$850,000 Note" and the loan made pursuant thereto is designated as "Loan 26");

    c. Business Access Line of Credit Note executed on December 30, 2015 and made effective January 5, 2016 in the original principal amount of $200,000 (the "$200,000 BALOC Note" and the loan made pursuant thereto is designated as "Loan 109");

    d. U.S. Small Business Administration Note executed on August 1, 2016 in the original principal amount of $100,000 (the "$100,000 SBA Note" and the loan made pursuant thereto is designated as "Loan 67");

    e. Term Note executed on February 28, 2017 in the original principal amount of $200,000 (the "$200,000 Note" and the loan made pursuant thereto is designated as "Loan 75");

    f. Multiple Disbursement Term Note executed on July 26, 2017 in the original principal amount of $100,000 (the "$100,000 MD Note" and the loan made pursuant thereto is designated as "Loan 91"); and

    g. Term Note executed on March 4, 2016 in the original principal amount of $100,000, which was subsequently amended and restated by a Term Note dated June 16, 2016, in the original principal amount of $84,266.77 (the "$84,266.77 Note" and the loan made pursuant thereto is designated as "Loan 59") (collectively, the $2,285,000 Note, the $850,000 Notes, the $200,000 BALOC Note, the $100,000 SBA Note, the $200,000 Note, the

3

$100,000 MD Note, and the $84,266.77 Note are referred to as the "M&T Notes").

See M&T Bank Claim, Part 2 at 17-42; M&T Bank Claim, Part 3 at 1-17.

14. The Debtors' obligations under the M&T Notes and related loan documents are secured by the following mortgages and real property liens:

   a. Mortgage executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600154;

   b. Assignment of Rents and Leases, executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600155;

   c. Mortgage executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600156;

   d. Assignment of Rents and Leases, executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600157;

   e. Mortgage executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600158; and

   f. Assignment of Rents and Leases, executed on December 30, 2015 and made effective January 5, 2016, recorded on January 5, 2016, in the Recorder of Deeds Office of Blair County, Pennsylvania, at Instrument No. 201600159.

See M&T Bank Claim, Part 5 at 2-50; M&T Bank Claim, Part 6 at 1-38.

15. Each of the foregoing mortgages (collectively, the "Mortgages") and Assignments of Rents and Leases (collectively, the "Assignments of Rent") described in paragraph 14, secures an interest in the following real property:

   a. Tax Parcel No. 20-12-1B, a 165-acre parcel located at 1098 Frederick Road, Martinsburg, Pennsylvania 16662 ("1098 Frederick Road");

   b. Tax Parcel No. 20-9-9C, a 66-acre parcel located at 1219 Frederick Road, Martinsburg, Pennsylvania 16662 ("1219 Frederick Road"); and

   c. Parcel No. 20-9-8, a 62-acre parcel located at Frederick Road in Martinsburg, Pennsylvania 16662, which the Debtors' schedules identify as having an address of Cove Lane ("Cove Lane"),

all as more fully described in the Mortgages. See id.

16. Though the Debtors hold title to Cove Lane, the farm and residence thereupon are in the possession of and occupied by the Debtors' son, Eric, who lives there rent free.

17. The obligations under the M&T Notes are also secured by security interests in substantially all of the tangible and intangible personal property of the Fredericks (the "Personal Property Liens" and together with the property secured by the Mortgages and Assignments of Rent, the "M&T Collateral"), pursuant to various General Security Agreements, generally dated and executed as of the same date as the M&T Notes, except that pursuant to a Credit Agreement dated March 4, 2016, the parties agreed that the indebtedness associated with the $84,266.77 Note would be secured by a first priority security interest in all of Debtor's non-real estate assets pursuant to a Security Agreement executed by Debtors on December 30, 2015 and made effective January 5, 2016. See M&T Bank Claim, Part 8 at 2-35. All of the M&T Bank loan documents are also cross-collateralized and secure all obligations.

18. The security interests granted by the General Security Agreements are duly perfected by, *inter alia*, valid UCC Financing Statements properly filed as of January 8, 2016, March 1, 2017, and February 26, 2018. See M&T Bank Claim, Part 9 at 2-6.

19. The security interests granted by the General Security Agreements are first priority liens by virtue of the UCC filings and various General Subordination Agreements executed by Growmark FS, LLC, except that FSA has a first lien on certain personal property, including the livestock owned by the Debtors.

20. The Fredericks defaulted under each of the M&T Notes as a result of, among other things, the Fredericks' failure to make certain payments under the terms of the M&T Notes when due.

21. On November 30, 2018, judgment by confession against the Fredericks and in favor of M&T Bank, in the amount of $3,726,542.61, plus accruing interest and costs of suit (the

"Judgment"), was entered in the United States District Court for the Western District of Pennsylvania at miscellaneous case number 318-mc-00036. See M&T Bank Claim, Part 4 at 25.

22. According to the M&T Bank Claim, the balance owed by the Debtors to M&T Bank, as of the Petition Date, was $3,745,363.62, plus accruing interest and other charges, in accordance with the Judgment. See M&T Bank Claim at 2.

23. According to the M&T Bank Claim and based on information furnished by the Debtors and appraisals obtained prior to the bankruptcy filings and as stipulated to by the parties in, and for the purposes of, the Cash Collateral Order (as defined below at ¶26), the estimated value of the property subject to M&T Bank's liens as of the Petition Date was believed to be as follows:

| Description | Value |
|---|---|
| 1098 Frederick Road[1] | $2,500,000.00 |
| 1219 Frederick Road | $760,000.00 |
| Cove Lane | $630,000.00 |
| Cows | $448,385.00 |
| Equipment | $432,000.00 |
|  | $4,770,385.00 |
| Less amount of FSA's first priority security interest | - $232,276.97 |
| **Total:** | **$4,538,108.03** |

See M&T Bank Claim at 2.

24. Thus, as of the Petition Date, M&T Bank believed it had an "equity cushion" of approximately $792,744.41.

25. On April 24, 2019, M&T Bank and FSA filed a Joint Motion to Prohibit or Condition Use of Cash Collateral. (ECF Doc. No. 43).

26. On June 11, 2019, the Court entered an agreed order (the "Cash Collateral Order") imposing certain conditions on the Debtors' use of cash collateral during the period from June 1, 2019, through the earlier of July 31, 2019, or the Termination Date (as that term is defined in the

---

[1] This value incorporates the appraised value of milking parlor equipment located on 1098 Frederick Lane, in the amount of $130,000.

Cash Collateral Order). (ECF No. 43). Among other things, the Cash Collateral Order required the Debtors to make monthly adequate protection payments to M&T Bank in the amount of $7,500 and to FSA in the amount of $2,311,[2] as well as monthly payments to the Lampl Law Firm in the amount of $4,000.

27. The Cash Collateral Order expired by its terms on July 31, 2019. Notwithstanding the expiration of the Cash Collateral Order, the Debtors continued to make monthly payments to M&T Bank in the amount of $7,500 from August 2019 through February 2020. Due to an alleged inability to pay the full $7,500, however, the Debtors' unilaterally (and without any notice) reduced the amount and only paid M&T Bank $2,500 for March, April, and May 2020. The Debtors have failed to timely make any payment for June 2020. Despite making just 1/3 of the payment to M&T Bank, the Debtors' most recent Monthly Operating Reports show that the Debtors' have continued to make the full monthly payments of $4,000 to the Lampl Law Firm, and that FSA has continued to receive its full monthly payment (for both the Debtors' and Eric's loans) directly from the Co-Op. (ECF Nos. 81, 82, 83, 84).

## RELIEF REQUESTED

28. M&T Bank requests that this Court enter an order granting relief from the automatic stay, pursuant to section 362(d)(1) or (d)(2) of the Bankruptcy Code, so that M&T Bank may pursue its rights and remedies against the M&T Collateral, whether arising under the M&T Bank Notes, the Mortgages, the Assignments of Rent, the General Security Agreements, the related loan documents, at law or in equity, or otherwise.

## LAW AND ARGUMENT

29. Section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

---

[2] FSA receives a total of $4,602 per month directly from the Maryland and Virginia Milk Producers Cooperative Association, Incorporated (the "Co-Op") out of the proceeds of milk sold to the Co-Op by the Debtors. Of that amount, $2,311 is applied to loans made to the Debtors, and $2,291 is applied to loans made to the Debtors' son, Eric.

7

  (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2) with respect to a stay of an act against property under subsection (a) of this section if—

      (A) the debtor does not have an equity in such property; and

      (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

  30. Without a statutory definition or a rigid test to determine whether sufficient cause exists, "[c]ourts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant" when resolving motions for relief for cause. American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993); see also Baldino v. Wilson (In re Wilson), 116 F.3d. 87, 90 (3d Cir. 1997) (granting relief from the stay and stating that whether cause exists for relief from the stay must be determined by examining the totality of the circumstances in each particular case).

  31. Failure to provide a movant with adequate protection of its secured claim is one ground for finding "cause" under § 362(d)(1). See In re Jer/Jameson Mezz Borrower II, LLC, 461 B.R. 293, 307 (Bankr. D. Del. 2011).

  32. Since the Petition Date, the aggregate value of the real property securing the Debtors' obligations to M&T Bank has declined significantly.

33. According to recent appraisals effective as of March 9, 2020, the real property securing the Debtors' obligations to M&T Bank was valued at $3,685,000 as follows:

| Description | Value |
|---|---|
| 1098 Frederick Road[3] | $2,250,000.00 |
| 1219 Frederick Road | $775,000.00 |
| Cove Lane | $660,000.00 |
| **Total:** | **$3,685,000.00** |

These real estate values are based on an "as is" market value appraisal. The Market Value determined by the appraiser means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. The Debtors, however, have steadfastly resisted any orderly sale process and have refused to expose their assets to an open market free from any undue stimulus as they are afraid it may prevent them from transferring their assets to their son, Eric.

34. Earlier in the course of this case, the Debtors presented M&T Bank with a prospective purchaser who, over time, presented several proposals for the purchase of the Debtors' assets. The discussions were initially in the range of $3.1 million; however, there was never any commitment or clarification on what might be included in any such deal. Efforts to clarify the proposal made it clear that the buyer (who was likely acting at least in part as a straw man for Eric Frederick) believed $3.1 million was for all of the Debtors' assets, not just the M&T Collateral. That amount was not only substantially below the values scheduled by the Debtors and the pre-petition appraised values, but it also was woefully short of the M&T Bank debt, not to mention the FSA debt and the debt of other secured parties (such as Hometown Bank) who have liens on certain non-M&T Collateral. As discussions continued, the proposals and corresponding valuations of

---

[3] This value incorporates the appraised value of milking parlor equipment located on 1098 Frederick Lane, in the amount of $75,000. This represents a depreciation of over 40% from the prepetition appraised value of the milking parlor equipment. See supra note 1.

9

the property declined dramatically. In the latest proposal, the Debtors' favored purchaser no longer had any interest in the 1219 Frederick Road or Cove Lane properties or any of the farm equipment or livestock. The favored purchaser proposed to acquire only the real estate at 1098 Frederick Road for $1,000,000 – 60% below the value listed by the Debtors on Schedule A/B (at 1.1).

35. Moreover, the Debtors' preferred buyer is a relative of the Debtors (his son is married to the Debtors' daughter) and the Debtors' goal has now become clear—namely, ensuring that their son, Eric, can retain possession of, or acquire title to, his rent-free home and grazing land on Cove Lane while having access to the milking equipment, barns and other farm assets located on 1098 Frederick Road. Rather than maximize the value of the estate assets, the Debtors seek to use the bankruptcy as an estate planning tool to transfer their encumbered assets to Eric through the use of a "straw party" buyer and/or to delay the sale process until Eric hits the lottery or otherwise obtains financing to purchase the desired assets directly—at a price well below market value.

36. Recently, M&T Bank has been informed that Eric has been pursuing financing to purchase the M&T Collateral and possibly other assets directly for a price of $2,600,000. M&T Bank does not support a sale to Eric—or anyone else—at a price so far below the appraised value of the real property, not to mention the value of the other assets.

37. Additionally, within the last few months, the Debtors have lost approximately one third of their herd of milking cows. As of June 2019, the Debtors owned 285 cows. As of February 2020, that number had decreased to 191. No explanation for that dramatic decrease has been provided, except the Debtors blame it on a breeding problem. However, the Debtors claim Eric figured how to address the breeding problem so the herd which he allegedly owns did not suffer a major loss, but at least 94 milking cows from his parents' herd died (or were culled without any accounting for the beef sales). This shocking revelation, which the secured creditors learned

mostly by happenstance rather than disclosure from the Debtors, highlights not only the continuing risk to the secured creditors, but also the lack of candor displayed by the Debtors since prior to the filing.

38.  In the Cash Collateral Order, the Debtors agreed to be responsible for 70% of the expenses of the farm operations and Eric would be responsible for 30%, based on the alleged ownership of the herd at that time.  Despite the significant reduction in their herd, the Debtors appear to still be shouldering 70% of the expenses of farming operations related to both their and Eric's herds, as evidence in their most recent monthly operating reports. (ECF Nos. 81, 82, 83, 84).  Indeed, the Debtors have never accurately accounted for the sharing of revenues and expenses and M&T Bank believes the Debtors are paying significantly more than their share of expenses or are otherwise transferring excessive revenues to Eric.

39.  Moreover, the economic downturn due to the outbreak of COVID-19 has had pronounced negative effects on the Debtors and the dairy industry as a whole.

40.  Milk prices have plummeted.  As illustrated by Minimum Producer Price Data reports published by the Pennsylvania Milk Marketing Board, prices have decreased month over month from January to May 2020.  True and correct copies of those reports are attached as **Exhibit 2** and incorporated by reference.  The recent Advanced Class Prices by Order published by the USDA during March, April and May, 2020 (the "USDA Price Reports") confirm that trend by reporting prices of $16.64 per cwt ("hundred weight") for April (down $0.82 from March), $12.95 per cwt for May, and $11.42 per cwt for June.  True and correct copies of the USDA Price Reports are attached hereto as **Exhibit 3** and incorporated by reference.

41.  The Debtors monthly operating reports are consistent with the industry trend, as the "Gross Price at Test" paid to the Debtors by the Co-Op has decreased from January through April 2020 from $21.61 cwt to $19.52 cwt. (ECF Nos. 81, 82, 83, 84).

42. At the same time, there is greatly reduced demand for dairy products due to school and restaurant closures and the general slowdown of the economy due to the pandemic.

43. Accordingly, upon information and belief, milk producers and distributors have ordered farmers to reduce production.

44. The Monthly Operating Reports for January, February, March and April 2020 (ECF Nos. 81, 82, 83, 84), which the Debtors just recently filed, show expenses exceeded revenues in three of four months, and in March revenues exceeded expenses by only $4,679.12. From May 1, 2019 through April 2020, the Debtors' cash on hand has also decreased in the aggregate amount of $28,604.54 in the Debtors' two reported bank accounts (from $60,305.32 to $31,700.78). See Monthly Operating Report for May 2019 (ECF No. 64)[4] and Monthly Operating Report for April 2020 (ECF No. 84). That decrease also does not account for the $5,000 per month payments the Debtors stopped sending to M&T Bank as of March 2020.

45. Moreover, the Direct Deposit Advices from the Co-Op in the February, March, and April 2020 Monthly Operating Reports reflect a new deduction for "Capital Retain," at a rate of $0.20 per cwt of milk sold. For the period from February through April 2020, that deduction has averaged just under $1,000 each month. Accordingly, this represents a new, material expense that will further strain the Debtors' budget.

46. Since the Debtors have not made any loan payments to M&T Bank during this case, the M&T Bank debt continues to increase, even though M&T Bank has provided the Debtors with the gratuitous benefit of applying the "adequate protection" payments it received to the principal balance of its primary mortgage loan. The following table shows the principal balances of the

---

[4] This is the first Monthly Operating Report to include statements covering both of the Debtors' bank accounts. The April 2019 Monthly Operating Report includes only a statement covering the Citizens Bank checking account. (ECF No. 51). All prior Monthly Operating Reports include a statement covering an Altoona First Savings Bank account held by Eric Frederick. See Monthly Operating Report for February 2019 at 10, 12-14 (ECF No. 40).

12

loans evidenced by the M&T Notes, accrued interest, and the total balance owed by the Debtors to M&T Bank in connection with the M&T Notes as of June 11, 2020.

| Loan No. | Principal Balance | Interest Rate | Per Diem as of 6/11/2020 | Interest Accrued 12/20/2018 - 6/11/2020 | Total Interest as of 6/11/2020 |
|---|---|---|---|---|---|
| 42 | $2,085,110.66 | 9.5% | 550.24 | $302,636.96 | $380,640.58 |
| 26 | $668,713.35 | 9.5% | 176.47 | $95,115.25 | $117,001.42 |
| 109 | $199,933.30 | 14.9% | 81.62 | $43,991.41 | $51,010.96 |
| 59 | $40,960.06 | 9.5% | 10.81 | $5,826.02 | $6,968.35 |
| 75 | $129,166.61 | Prime + 6% | 33.19 | $21,028.17 | $25,362.43 |
| 91 | $40,390.95 | Prime + 6% | 10.38 | $6,575.61 | $7,907.39 |
| 67 | $50,000.08 | Prime + 1% | 5.82 | $4,378.06 | $5,564.37 |
| | **$3,214,275.01** | | **$868.53** | **$479,551.48** | **$594,455.50** |
| **Principal** | | | | | **$3,214,275.01** |
| **Attorney's Commission (per Judgment)** | | | | | **$338,278.31** |
| **Late Charges (per Judgment through 11/29/2018)** | | | | | **$5,481.25** |
| **Grand Total Owed to M&T Bank as of 5/27/2020:** | | | | | **$4,152,490.07** |

47. While the debt has continued to grow (at a pace that the Debtors clearly lack the cash flow to service), the value of the M&T Collateral has diminished as indicated by the following chart. The herd and thus the value of the cows has diminished by 30%, from $448,385 to $299,073, as a result of the dead cows now allegedly buried in the compost pile in the Debtors' yard. The Equipment obviously has depreciated during the pendency of this case, and will continue to depreciate. Because the Debtors do not maintain (or report) financial statements, the precise amount of depreciation that should be recorded by the Debtors is unknown. However, under standard accounting rules, according to the Federal Reserve System's Financial Accounting Manual for Federal Reserve Banks, the Debtors' operating equipment has a maximum salvage value of 10% and a useful life of 72 months. See Board of Governors of the Federal Reserve Board, Financial Accounting Manual for Federal Reserve Banks 92 (January 2020),

13

https://www.federalreserve.gov/monetarypolicy/files/BSTfinaccountingmanual.pdf. Assuming the Debtors' scheduled value of $432,000 is the "cost" of the equipment (an assumption that favors the Debtors for these purposes), subtracting the 10% salvage value of $43,200 results in depreciable equipment of $388,800 and a monthly depreciation of $5,400 based on the 72 month useful life of the Equipment (again, assuming most favorably for the Debtors that the useful life began on the Petition Date). See id. at 90. During the 18 months this case has been pending, the Equipment has depreciated by $97,200, leaving a net Equipment value of approximately $334,800. See id. As of March 27, 2020, the total balance owed by the Debtors to FSA was $200,614.17.[5] The real estate values reflect the most recent appraisals or the "market price" as indicated by the only offer from a willing, albeit related, buyer for 1098 Frederick Road.

| Description | Appraised Value | Market Value |
|---|---|---|
| 1098 Frederick Road | $2,250,000 | $1,000,000 |
| 1219 Frederick Road | $775,000 | $775,000 |
| Cove Lane | $660,000 | $660,000 |
| Cows | $299,073 | $299,073 |
| Equipment | $334,800 | $334,800 |
|  | $4,318,873 | $3,068,873 |
| Less amount of FSA's first priority security interest | - $200,614 | 200,614 |
| **Total:** | **$4,118,259** | **$2,868,259** |

48.     Moreover, the Debtors themselves, based on the purchase proposal their son, Eric, is attempting to finance, value the M&T Collateral at only $2,600,000. If the FSA debt is subtracted from that alleged value, the M&T Collateral would only be valued at $2,399,386.

49.     Therefore, M&T Bank's Collateral has gone from a perceived value that created an equity cushion of $792,744.41 as of the Petition Date to a value—based on both the appraised value and the market value as determined by the offer presented to date or that might be presented by the Debtors' son—that has totally wiped out any equity cushion.

---

[5] This amount would have decreased modestly as a result of subsequent monthly payments from the Co-Op payments, but this provides a reasonable estimate based on the latest information provided to M&T Bank.

50. For the foregoing reasons, M&T Bank's interest in it's the M&T Collateral is not adequately protected. The Debtors have not provided, and cannot provide, M&T Bank with protection that is adequate to cover the diminution in value that has already occurred and may occur in the future. Since March of this year, the Debtors have even refused to pay in full the paltry $7,500 monthly payment they had been making and are delinquent in the total amount of $22,500 as of the filing of this Motion.

51. The Debtors lack any equity in the M&T Collateral and do not need it for an effective reorganization because the Debtors are not capable of reorganizing.

52. Beyond their inability to provide adequate protection, the Debtors have failed to fulfill their duties as debtors in possession, and to meaningfully progress this case.

53. The Debtors have been operating without express authorization to use cash collateral for nearly eleven months. The secured creditors, M&T Bank and FSA, have offered to consent to cash collateral but conditioned their consent, among other things, on an orderly sale process or auction. The Debtors, however, would not agree to any process that might provide for market exposure or that would lessen the prospects of Eric, directly or indirectly, acquiring the property or increase the price Eric may have to pay to acquire the bankruptcy estate assets.

54. Moreover, this case has been pending for over seventeen months and the Debtors have failed to present, let alone confirm, a plan of reorganization. They did not even request an extension of their exclusivity period, which expired well over a year ago.

55. Additionally, it is obvious that the Debtors are unable to fulfill all of their financial obligations.

56. As stated above, the Debtors were unable to make adequate protection payments to M&T Bank in the full amount for March, April, May, and June 2020.

57. Further, on March 19, 2020, Hometown Bank of Pennsylvania ("Hometown Bank") filed a motion requesting relief from the automatic stay (the "Hometown Bank Motion"). (ECF No. 76). A hearing on the Hometown Bank Motion is currently scheduled for June 24, 2020. (ECF No. 85).

58. The Hometown Bank Motion alleges that the Debtors are obligated to Hometown Bank in connection with a note and related mortgage, which mortgage secures real property known as 3871 Cove Mountain Road, Martinsburg, PA 16662. The Hometown Bank Motion further asserts that the Debtors are currently due for the July 2019 payment, that Hometown Bank has not received any adequate protection payments, and that the total amount past due under the mortgage is $14,132.72.

59. The failure to make mortgage payments to Hometown Bank and the reduction of the adequate protection payments to M&T Bank make it clear that the Debtors cannot realistically maintain the status quo in this case and satisfy all of their obligations to their creditors.

60. In light of the foregoing, granting M&T Bank relief from the automatic stay for cause pursuant to § 362(d)(1) is appropriate.

61. The Court should also grant relief from the automatic stay in this instance under § 362(d)(2).

62. Based on the above valuation, the liens on the M&T Collateral exceed the value of the M&T Collateral, and therefore the Debtors lack equity in the M&T Collateral.

63. Additionally, the M&T Collateral is not necessary to an effective reorganization because there is no realistic prospect for an effective reorganization.

64. As previously stated, the Debtors have failed to even propose a plan of reorganization in the seventeen months this case has been pending and the Debtors lack the financial wherewithal to support a feasible plan.

65. The Debtors' herd is literally dying off and the value of the Debtors' other assets is steadily declining as well.

66. Those factors, combined with the economic downturn and conditions within the dairy industry (which were depressed even before the pandemic hit), have rendered the outlook of this case grim, at best.

67. Accordingly, relief from the automatic stay pursuant to § 362(d)(2) is appropriate.

## CONCLUSION

68. For all the reasons stated above, the Court should grant M&T Bank relief from the automatic stay under § 362(d)(1) or (d)(2).

WHEREFORE, M&T Bank respectfully requests that this Honorable Court enter an order, substantially in the form attached hereto, (i) granting this Motion in its entirety; (ii) lifting the automatic stay so that M&T Bank may pursue its rights and remedies against the M&T Collateral, whether arising under the M&T Bank Notes, the Mortgages, the Assignments of Rent, the related loan documents, at law or in equity, or otherwise; and (iii) granting any other or further relief this Court deems just and proper.

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

Dated: June 11, 2020

By: */s/ William E. Kelleher, Jr.*
William E. Kelleher, Jr.
Pa I.D. 30747
Daniel P. Branagan
Pa I.D. 324607
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Phone: (412) 297-4900
Fax:   (412) 209-0672
bill.kelleher@dentons.com
daniel.branagan@dentons.com

*Counsel for M&T Bank*