# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:** | |
| **LARRY FREDERICK and SHARON FREDERICK,** | Bankruptcy No. 18-70870-JAD |
| | Chapter 11 |
| Joint Debtors, | Document No. |
| **M&T BANK,** | Related to Doc. No. 88 |
| Movant, | Hearing Date and Time: |
| vs. | July 14, 2020 at 10:00 am |
| **LARRY FREDERICK and SHARON FREDERICK,** | |
| Respondents. | |

## RESPONSE TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**AND NOW** come Larry Frederick and Sharon Frederick, Joint Debtors, by and through their Counsel, Robert O Lampl, John P. Lacher, Ryan J. Cooney and Sy O. Lampl and file the following **RESPONSE TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY** (the "Motion"):

### PRELIMINARY STATEMENT

The Joint Debtors operate a fourth generation dairy farm in Blair County, Pennsylvania. Over the last few years, a significant number of Pennsylvania dairy farms have been forced to seek bankruptcy protection. As stated by M&T in the Motion, milk prices have plummeted. However, low milk prices are not a recent phenomenon. To the contrary, there has been a sustained period of low milk prices from early 2015 through the date of the filing of this response. Low milk prices, along with the high debt load required to sustain most agricultural enterprises has resulted in many bankruptcies.

1

*See, September 2019 Study of Pennsylvania's Dairy Industry by the Legislative Budget and Finance Committee.*

Facing Confessions of Judgment filed by M&T Bank ("M&T"), the Joint Debtors filed the within case in December of 2018 in order to preserve the value of their assets and in an attempt to preserve their way of life and only thing they have ever known.

Since the filing, the Joint Debtors, through Counsel, have been in fairly regular contact with M&T regarding the direction of this case. Starting in June 2019 and continuing through the present, the Joint Debtors have made monthly adequate protection payments to M&T. The Joint Debtors acknowledge that they had to recently reduce these payments.

The main point of contention from the beginning has been whether or not the Joint Debtors should liquidate their assets through an auction process. While the Joint Debtors acknowledge that M&T has a substantial claim (a portion of which is subject to dispute), its goes without saying that the Joint Debtors have a competing interest in exiting from this Chapter 11 with at least some ability to continue their agricultural lifestyle. Additionally, and from an objective standpoint, the Joint Debtors commissioned the opinion of a highly regarded Pennsylvania commercial farm broker, John Mattilio. On July 3, 2019, Mr. Mattilio sent a letter to the undersigned in which he opined, *inter alia*, that:

> "…you should not have a public auction unless you have 4-6 true potential buyers. Facilities like this Frederick Home farm would not do well at auction since there may be only one or two potential buyers from this property. The very nature of a public auction needs competitive bidding. It does not work with a specialized facility in an industry that is not currently making money."

A true and correct copy of John Mattilio's July 3, 2019 letter is attached hereto as **Exhibit A**.

Despite their hesitancy and Mr. Mattilio's opinion, in July of 2019, the Joint Debtors agreed to conduct due diligence with respect to potential auction companies. During this process, it became increasingly clear that M&T strongly preferred Comly Auctioneers and Appraisers ("Comly"). However, through multiple discussions that the undersigned had with representatives of Comly, it became apparent that M&T was having offline conversations with Comly about the Joint Debtors' circumstances, which in the eyes of the undersigned at least created the appearance that Comly was not disinterested. Furthermore, during a July 24, 2019 call, Steve Comly expressly stated that in his view the ballpark value of the Joint Debtors' assets was $2,000,000 and that he expected them to fetch over $1,000,000 at an auction before a 10% commission.

The very next day, and potentially at the behest of M&T, Mr. Comly sent the undersigned an email in attempt to clarify his statements with respect to value. In his July 25, 2019 email, Mr. Comly stated that we should look at value as a range, "and that range could be $1,500,000 to $3,500,000." Again, before a 10% commission.

As a result of this due diligence and also based on the opinion of Mr. Mattilio, the Joint Debtors believed that it was both in their best interest and also their creditors' best interest to pursue a private sale with another farmer in the area.

Consistent with the same, the Joint Debtors had conversations, which ultimately led to negotiations, with another local farmer, Rodney Metzler, almost since the commencement of the within case. From the beginning it was disclosed that the Joint Debtors' daughter was married to Mr. Metzler's son. While M&T was initially hesitant,

3

the concept of a private sale to Mr. Metzler gained traction in September of 2019. In fact, during a phone call during the third week of September 2019, M&T expressly agreed to support a private sale of the Joint Debtors' assets to Mr. Metzler for the total consideration of $3,100,000. However, when the Joint Debtors procured such an offer from Mr. Metzler and presented it to M&T, M&T reneged and stated that it would only support a private sale if it resulted in a "net recovery" to M&T and the FSA in the amount of $3,100,000. Following this reneging, the negotiations with Mr. Metzler temporarily stalled.

In early 2020, the negotiations with Mr. Metzler re-commenced following the joint decision to have a representative of M&T negotiate directly with Mr. Metzler regarding the price at which M&T and also the FSA would release their liens on the Joint Debtors' assets. In April of 2020, M&T and the FSA agreed to support a sale of their collateral to Mr. Metzler for consideration in the amount of $2,600,000. Emails supporting the same are collectively attached hereto as **Exhibit B**. Additionally, the Joint Debtors believe that there exist communications directly between M&T and Mr. Meltzer that also support this amount. Thus, it is completely disingenuous for M&T to now argue in the instant motion that it would not support a sale for $2,600,000. *See, Motion paragraph 36*.

Unfortunately, due to the fact that, "the World has changed," (quote from Mr. Metzler's Attorney) Mr. Metzler, through counsel, sent the parties an email dated April 24, 2020 through which he attempted to change the terms of the deal. The proposed changes were unacceptable to both M&T and the Joint Debtors.

At the same time and with the express knowledge that M&T and the FSA were now on board with a $2,600,000 sale, the Joint Debtors' son and farm manager, Eric

4

Frederick began exploring financing opportunities for the purchase of M&T and the FSA's collateral from the Joint Debtors. On June 9, 2020, Eric Frederick was approved for financing to cover a $2,600,000 purchase price. The financing package consisted of a $1,800,000 loan from Kish Bank and an $800,000 loan from the FSA, one of the secured creditors herein. Thus, at least implicitly, the FSA appears to be on board with the plan to sell their collateral to Eric Frederick.

The Joint Debtors shared these financing details with M&T and expected its support. Instead, two days, later M&T filed the instant Motion. M&T cannot and will not be able to explain why it does not support a sale to Eric Frederick for $2,600,000 when records and communications will reveal that it expressly supported a sale in that amount to Rodney Metzler just two months ago.

In any event, the Joint Debtors are within days from finalizing a Plan, Disclosure Statement and Sale Motion built around the sale of M&T and the FSA's collateral to Eric Frederick. The Joint Debtors expect to file these documents by July 3, 2020. The Joint Debtors are hopeful that M&T will reevaluate its position.

## INTRODUCTION

1.	To the extent this paragraph sets forth conclusions of law, no response is required. It is admitted that M&T Bank extended several loans to the Joint Debtors and that M&T confessed judgment against the Joint Debtors in November 2018. The remainder of this paragraph is denied. Finally, the Joint Debtors hereby incorporate their Preliminary Statement.

## PARTIES

2.	Admitted.

    3.      Admitted.

## JURISDICTION AND VENUE

    4.      Admitted.

    5.      Admitted.

    6.      Admitted.

## BACKGROUND

    7.      Admitted.

    8.      Admitted.

    9.      Admitted.

    10.     Admitted. By way of further response, the Joint Debtors are within days from finalizing a Plan, Disclosure Statement and Sale Motion built around the sale of M&T and the FSA's collateral to Eric Frederick. The Joint Debtors expect to file these documents by July 3, 2020.

    11.     It is admitted that M&T filed a proof of claim. The proof of claim is a written document which speaks for itself.

    12.     This paragraph sets forth conclusions of law for which no response is required.

    13.     The averments of this paragraph are denied to the extent that Movant's characterizations of the promissory notes differ from their plain terms as the promissory notes are written documents that speak for themselves.

    14.     To the extent this paragraph sets forth conclusions of law, no response is required. By way of further response, the averments of this paragraph are denied to the

6

extent that Movant's characterizations of the mortgage documents differ from their plain terms as the mortgage documents are written documents that speak for themselves.

15. To the extent this paragraph sets forth conclusions of law, no response is required. By way of further response, the averments of this paragraph are denied to the extent that Movant's characterization of the mortgage documents differ from their plain terms as the mortgage documents are written documents that speak for themselves.

16. Denied. Eric Frederick lives at 1219 Frederick Road. By way of further response, Eric Frederick and his family manage and personally participate in all of the Joint Debtors' farming operations. To say that he lives "rent free" is seemingly a hollow attempt to imply that he is a free loader. To the contrary, Eric Frederick and his children work incredibly long hours and provide substantial value for little pay.

17. To the extent this paragraph sets forth conclusions of law, no response is required. By way of further response, the averments of this paragraph are denied to the extent that Movant's characterizations of the loan documents differ from their plain terms as the loan documents are written documents that speak for themselves.

18. To the extent this paragraph sets forth conclusions of law, no response is required. By way of further response, the averments of this paragraph are denied to the extent that Movant's characterizations of the UCC Financing Statements differ from their plain terms as the UCC Financing Statements are written documents that speak for themselves.

19. To the extent this paragraph sets forth conclusions of law, no response is required. By way of further response, the averments of this paragraph are denied to the extent that Movant's characterizations of the UCC Financing Statements differ from their

plain terms as the UCC Financing Statements are written documents that speak for themselves.

20. The averments of this paragraph set forth conclusions of law for which no response is required.

21. It is admitted that M&T confessed Judgment. By way of further response, the Joint Debtors filed the within bankruptcy case prior to the expiration of the 30-day time period to strike and/or open the judgment. The Joint Debtors continue to dispute the amount of the judgment.

22. This paragraph sets forth conclusions of law for which no response is required. By way of further response, the averments of this paragraph are denied to the extent that Movant's characterizations of the M&T Bank Claim and supporting documents differ from their plain terms as the M&T Bank Claim and supporting documents are written documents that speak for themselves.

23. It is admitted that the stated values were stipulated to for the purposes of the Cash Collateral Order. It is denied that the stated values accurately reflect the state of the PA farming industry and resulting marketplace.

24. The Joint Debtors are without knowledge or information sufficient to form a belief as to the truth of the averments contained in paragraph 24. Accordingly, the averments contained in paragraph 24 are denied.

25. Admitted.

26. Admitted.

27. It is denied that the Joint Debtors made the full monthly payment to the Lampl Law Firm for March, April and May 2020. To the contrary, the Operating Reports

reflect that the Lampl Law Firm received only $1,000 in May of 2020. The remainder of this paragraph is admitted.

## RELIEF REQUESTED

28. It is denied that M&T Bank is entitled to the relief requested for the reasons set forth herein.

## LAW AND ARGUMENT

29. The averments of this paragraph set forth conclusions of law for which no response is required.

30. The averments of this paragraph set forth conclusions of law for which no response is required.

31. The averments of this paragraph set forth conclusions of law for which no response is required.

32. The averments of this paragraph set forth conclusions of law for which no response is required.

33. The averments of this paragraph set forth conclusions of law for which no response is required. By way of further response and in part based on the July 3, 2019 letter from John Mattilio, there is almost no market for the Joint Debtors' real estate. Thus, any attempt to put a value on the same is speculative.

34. The averments of this paragraph are denied. M&T expressly stated that that it would support a $3,100,000 sale. The Joint Debtors and the undersigned reasonably understood this to be a sale of all the Joint Debtors' non-exempt assets. This understanding was reasonable and expected as from the beginning of the within case it was always contemplated between the parties that the Joint Debtors would

pursue a sale of all their non-exempt assets. This concept is set forth in paragraph 7 of the Cash Collateral Order. However, after the Joint Debtors procured a $3,100,000 offer from Rodney Metzler for the Joint Debtors' non-exempt assets, M&T reneged and stated that it needed a net recovery of $3,100,000.

Notwithstanding the foregoing, months later, M&T commenced direct discussions with Rodney Metzler. As a result of those discussions, M&T agreed to support a sale of its collateral along with any collateral that the FSA had a first position lien on to Rodney Metzler for $2,600,000. This deal was confirmed by Mr. Metzler and is reflected in email communications. *See Exhibit B.*

35.	The averments of this paragraph are denied. Eric Frederick is in fact seeking to acquire some of the Joint Debtors' assets. However, he is seeking to acquire them for a price that M&T agreed to - $2,600,000.

36.	The averments of this paragraph are denied. To the contrary, Eric Frederick has obtained the requisite financing to pay the agreed upon price of $2,600,000. By way of further response, the Joint Debtors incorporate their Preliminary Statement. Finally, to say that M&T does not support a $2,600,000 sale is disingenuous and a breach of the duty of good faith and fair dealing.

37.	The averments of this paragraph are denied. The Joint Debtors submit that M&T was aware of a breeding issue affecting their herd since prior to the within case being filed. This information was shared with their former loan officer Blaine Smith during a routine visit to the Joint Debtors' farm before the within case was filed. Bruce Horning from the FSA was also present. This should have been documented in the Joint Debtors' file.

Regarding the breeding issue, Select Fires (the former breeder) along with a computer program (Dairy Comp) are at fault. P&G shots were given to already pregnant cows which caused abortions. As a result, the Joint Debtors were required to breed older cows. These older cows often develop problems after giving birth due to their age and weight which can lead to death. This problem has been resolved and the herd numbers have stabilized since November of 2019.

Finally, M&T's statement that this was a "shocking revelation, which the secured creditors learned mostly by happenstance," is an intentionally false characterization of the events surrounding this issue.

As stated, M&T was aware of this problem pre-bankruptcy. Moreover, the FSA conducted an inspection in November 2019 during which it was revealed that the Joint Debtors had 198 milking cows. The Joint Debtors never concealed this issue and never objected to any inspections sought by M&T and the FSA.

38.    It is admitted that based on an agreement with M&T and the FSA that the Joint Debtors would be responsible for 70% of the farm expenses and Eric would be responsible for 30%. In turn, the Joint Debtors receive 70% of the revenue derived from milk sales. At no point has M&T or the FSA ever objected to this arrangement. If anything, M&T has benefited from this split. Without it, the Joint Debtors would not have been able to make any adequate protection payments.

39.    Admitted. By way of further response, the dairy industry has been suffering for the last 5 years due to historically low milk prices and increased costs.

40. The averments of this paragraph are denied to the extent that Movant's characterizations of the USDA Price Reports differ from their plain terms as the USDA Price Reports are written documents that speak for themselves.

41. Admitted.

42. Admitted.

43. The Joint Debtors have not been ordered to reduce their production. However, they acknowledge that some farmers have been asked to reduce production.

44. The averments of this paragraph are denied to the extent that Movant's characterization of the Monthly Operating Reports differ from their plain terms as the Monthly Operating Reports are written documents that speak for themselves.

45. The averments of this paragraph are denied to the extent that Movant's characterization of the Monthly Operating Reports differ from their plain terms as the Monthly Operating Reports are written documents that speak for themselves.

46. The averments of this paragraph set forth conclusions of law for which no response is required. While the Joint Debtors acknowledge a large claim to M&T, they do not have knowledge regarding the application of adequate protection payments and interest charges. For instance, following the confessed judgments, interest should be capped at 6% in the event that M&T is entitled to interest at all. Furthermore, the Joint Debtors have and continue to object to unearned attorneys' fees in the amount of $338,278.31.

47. The averments of this paragraph set forth conclusions of law for which no response is required.

48. The Joint Debtors have no training or skills with respect to valuation. Eric Frederick has obtained financing for a $2,600,000 sale as that amount of consideration was agreed upon by M&T and Rodney Metzler in April of 2020.

49. The averments of this paragraph set forth conclusions of law for which no response is required.

50. The averments of this paragraph set forth conclusions of law for which no response is required. By way of further response, it is admitted that the Joint Debtors did not make the full $7,500 payment for March, April and May of 2020.

51. The averments of this paragraph set forth conclusions of law for which no response is required.

52. The averments of this paragraph set forth conclusions of law for which no response is required. By way of further response, the averments of this paragraph are denied. Finally, the Joint Debtors hereby incorporate their Preliminary Statement.

53. Denied. Per a phone call between the undersigned and Attorney Bill Kelleher during the first week of August 2019, it was agreed that even though the authorization to use cash collateral under the Cash Collateral Order expired on July 31, 2019, the Joint Debtors did not need to seek approval to use cash collateral as the parties were negotiating. This agreement was confirmed on August 6, 2019, by Attorney Kelleher through an email which stated that M&T, "wouldn't make an issue out of not having authority presently if we could quickly come to an agreement, unless I gave you some warning. My prior email did not provide that warning." A copy of this August 6, 2019 email is attached hereto as **Exhibit C**. As of the date of this response, M&T has not provided a "warning" with respect to cash collateral which would have signaled to

the Joint Debtors that a motion needed to be filed. Further, the Joint Debtors continued making adequate protection payments which were accepted by M&T long after the July 31, 2019 expiration date.

54. Admitted. The Joint Debtors hereby incorporate their Preliminary Statement.

55. The averments of this paragraph set forth conclusions of law for which no response is required.

56. Admitted.

57. Admitted. By way of further response, the hearing has been continued to July 14, 2020.

58. The averments of this paragraph are denied to the extent that Movant's characterization of the Hometown Bank Motion differs from its plain terms as the Hometown Bank Motion is a written document that speaks for itself.

59. The averments of this paragraph set forth conclusions of law for which no response is required. By way of further response, M&T adamantly opposed the Joint Debtors making current payments to Hometown Bank. As a result, the Debtors stopped making them. M&T now attempts to use the Joint Debtors' nonpayment against them.

60. The averments of this paragraph set forth conclusions of law for which no response is required.

61. The averments of this paragraph set forth conclusions of law for which no response is required.

62. The averments of this paragraph set forth conclusions of law for which no response is required.

63. The averments of this paragraph set forth conclusions of law for which no response is required.

64. The averments of this paragraph set forth conclusions of law for which no response is required. By way of further response, the Joint Debtors hereby incorporate their Preliminary Statement.

65. The averments of this paragraph set forth conclusions of law for which no response is required. By way of further response, the Joint Debtors hereby incorporate their Preliminary Statement and response to paragraph 37.

66. The averments of this paragraph set forth conclusions of law for which no response is required.

67. The averments of this paragraph set forth conclusions of law for which no response is required.

## CONCLUSION

68. It is denied that M&T is entitled to relief from the automatic stay for the reasons set forth herein.

WHEREFORE, the Joint Debtors respectfully request that this Honorable Court deny M&T's Motion for Relief from the Automatic Stay.

                                                   Respectfully Submitted,

Date:  June 29, 2020                     */s/ Robert O Lampl*
                                                   ROBERT O LAMPL
                                                   PA I.D. #19809
                                                   JOHN P. LACHER
                                                   PA I.D. #62297
                                                   RYAN J. COONEY
                                                   PA I.D. #319213
                                                   SY O. LAMPL
                                                   PA I.D. #324741
                                                   223 Fourth Avenue, 4th Fl.
                                                   Pittsburgh, PA  15222
                                                   (412) 392-0330 (phone)
                                                   (412) 392-0335 (facsimile)
                                                   Email:  rlampl@lampllaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**IN RE:**

**LARRY FREDERICK and**          Bankruptcy No. 18-70870-JAD
**SHARON FREDERICK,**

         Chapter 11

         **Joint Debtors,**

         Document No.

**M&T BANK,**

         Related to Doc. No. 88

         **Movant,**

         Hearing Date and Time:

         **vs.**          July 14, 2020 at 10:00 am

**LARRY FREDERICK and**
**SHARON FREDERICK,**

         **Respondents.**

## CERTIFICATE OF SERVICE

I, Robert O Lampl, hereby certify, that on the 29th day of June, 2020, a true and correct copy of the foregoing **RESPONSE TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY** was served upon the following *(via electronic service)*:

Office of the U.S. Trustee
970 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA  15222

William E. Kelleher
Dentons Cohen & Grigsby, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222
Bill.kelleher@dentons.com

Date:  <u>June 29, 2020</u>　　　　　　　　　　　*/s/ Robert O Lampl*
　　　　　　　　　　　　　　　　　　　　　　ROBERT O LAMPL
　　　　　　　　　　　　　　　　　　　　　　PA I.D. #19809
　　　　　　　　　　　　　　　　　　　　　　JOHN P. LACHER
　　　　　　　　　　　　　　　　　　　　　　PA I.D. #62297
　　　　　　　　　　　　　　　　　　　　　　RYAN J. COONEY
　　　　　　　　　　　　　　　　　　　　　　PA I.D. #319213
　　　　　　　　　　　　　　　　　　　　　　SY O. LAMPL
　　　　　　　　　　　　　　　　　　　　　　PA I.D. #324741
　　　　　　　　　　　　　　　　　　　　　　223 Fourth Avenue, 4th Fl.
　　　　　　　　　　　　　　　　　　　　　　Pittsburgh, PA  15222
　　　　　　　　　　　　　　　　　　　　　　(412) 392-0330 (phone)
　　　　　　　　　　　　　　　　　　　　　　(412) 392-0335 (facsimile)
　　　　　　　　　　　　　　　　　　　　　　Email:  rlampl@lampllaw.com