

## GENERAL SUBORDINATION AGREEMENT
### Pennsylvania

DATE: _____, 2017

**CREDITOR**: Growmark FS, LLC, a Delaware limited liability company with offices located at 308 NE Front Street, Milford, Delaware 19963.

**LENDER:** M&T Bank, a New York banking corporation with banking offices at One M&T Plaza, Buffalo, New York 14203.  Attention: Office of General Counsel

**BORROWER:** Larry Richard Frederick a/k/a Larry R. Frederick and Sharon E. Frederick, husband and wife, residing at 1098 Frederick Road, Martinsburg, Pennsylvania 16662.

1.   **Subordination.**   Creditor, for value received, and intending to be legally bound, hereby subordinates, for the benefit of Lender, the Subordinated Obligations (defined below) to the Primary Obligations (defined below) and agrees to the other provisions of this Agreement.  The provisions of this Agreement shall remain effective and enforceable against Creditor regardless of the enforceability of the Primary Obligations.

   a.   "Primary Obligations" means any obligations under a Multiple Disbursement Term Note and its associated loan documents dated on or about even date herewith in the amount of $100,000 as amended from time to time.

   b.   "Subordinated Obligations" means collectively, any and all obligations owed by Borrower to Creditor whether now existing or hereafter incurred of every kind and character, whether such obligations are from time to time reduced and thereafter increased, or entirely extinguished and thereafter reincurred, whether direct, indirect, primary, absolute, secondary, contractual, tortious, liquidated, unliquidated, contingent, secured, unsecured, matured or unmatured, by guarantee or otherwise including, without limitation:  (i) the obligations described on Schedule A and all extensions, renewals or modifications thereof; (ii) obligations not yet outstanding, but contracted for, or with respect to which any other commitment by Creditor exists; (iii) all interest provided in any instrument, agreement or applicable law which accrues on any obligations; (iv) any obligations incurred prior to, during or after any filing by or against Borrower or any petition or request for liquidation, reorganization, arrangement, adjudication as a bankrupt, relief as a debtor, or other relief under bankruptcy, insolvency, or similar laws now or hereafter in effect in the United States of America or any state or territory thereof or any foreign jurisdiction, notwithstanding Borrower's legal status as a debtor or a debtor-in-possession or Borrower's discharge in any such proceeding, including, without limitation, any post-petition interest which may accrue on such obligations and whether or not all, or any part of, such obligations (including, without limitation, post-petition interest) is an allowable claim; (v) all fees and costs (including, without limitation, actual attorneys' fees and disbursements whether for internal or outside counsel) Creditor incurs in order to collect any amount due by Borrower, to negotiate or document a workout or restructuring, or to preserve its rights or realize upon any guaranty or other security for the payment of any amount due by Borrower to Creditor; and (vi) any sums owed by Borrower to others which Creditor has obtained, or may obtain, by assignment or otherwise.

2.   **Payments on Subordinated Obligations.**   Creditor shall have the right to receive payments on Subordinated Obligations listed on Schedule A unless and until Lender notifies Creditor or Borrower that an Event of Default (defined below) has occurred.  If Creditor receives any payments in violation of this paragraph or any other provision in this Agreement, Creditor will hold such payments in trust for Lender in the same medium in which received, will not commingle the same with any of the assets of Creditor, and will deliver the same to Lender in the form received, properly endorsed to permit collection, not later than the next business day following the day of their receipt.  Nothing herein shall require the Lender to accelerate or demand (as the case may be) payment of the Primary Obligations or exercise any other right or remedy against Borrower or any other person upon or after an Event of Default in order to exercise its rights under this Agreement.

3.   **Event of Default.**  Any of the following events or conditions shall constitute an "Event of Default":  (i) failure by Borrower to pay when due (whether at the stated maturity, by acceleration, upon demand or otherwise) the Primary Obligations, or any part thereof, or there occurs any event or condition which (after notice, lapse of time or after both notice and lapse of time will permit acceleration of any Primary Obligation; (ii) default by Borrower in the performance of any obligation, term or condition of any agreement with Lender or any of its affiliates or subsidiaries (collectively, "Affiliates"); (iii) failure by Borrower to pay when due (whether at the stated maturity, by acceleration, upon demand or otherwise) any indebtedness or obligation owing to any third party or any Affiliate, the occurrence of any event which could result in acceleration of payment of any such indebtedness or obligation or the failure to perform any agreement with any third party or any affiliate; (iv) Borrower is dissolved, becomes insolvent, generally fails to pay or admits in writing its inability generally to pay its debts as they become due; (v) Borrower makes a general assignment, arrangement or composition agreement with or for the benefit of its creditors or makes, or sends notice of any intended, bulk sale; the sale, assignment, transfer or delivery of all or substantially all of the assets of Borrower to a third party; or the cessation by Borrower as a going business concern; (vi) Borrower files a petition in bankruptcy or institutes any action under federal or state law for the relief of Borrower or seeks or consents to the appointment of an administrator, receiver, custodian or similar official for the wind up of its business (or has such a petition or action filed against it and such petition action or appointment is not dismissed or stayed within forty-five (45) days); (vii) the reorganization, merger, consolidation or dissolution of Borrower (or the making of any agreement therefor); (viii) the death or judicial declaration of incompetency of Borrower, if an individual; (ix) the entry of any judgment or order of any court, other governmental authority or arbitrator against Borrower; (x) falsity, omission or inaccuracy of facts submitted to Lender or any Affiliate (whether in a financial statement or otherwise); (xi) an adverse change in Borrower, its business, operations, affairs or condition (financial or otherwise) from the status shown on any financial statement or other document submitted to Lender, and which change Lender determines will have a material adverse effect on (a) Borrower, its business, operations or condition (financial or otherwise), or (b) the ability of Borrower to pay or perform the Primary Obligations; (xii) any pension plan of Borrower fails to comply with applicable law or has vested unfunded liabilities that, in the opinion of Lender, might have a material adverse effect on Borrower's ability to repay its debts; (xiii) any indication or evidence received by Lender that Borrower may have directly or indirectly been engaged in any type of activity which, in Lender's discretion, might result in the forfeiture of any property of Borrower to any governmental authority; (xiv) the occurrence of any event described in Section 3(i) through and including 3(xiii) with respect to Creditor or any endorser, guarantor or any other party liable for, or whose assets or any interest therein secures, payment of any of the Primary Obligations; or (xv) Lender in good faith deems itself insecure with respect to payment or performance of the Primary Obligations.

4.   **Pledge.**   Creditor does hereby transfer and assign to Lender the Subordinated Obligations along with any and all security for payment therefor and guaranties thereof, said assignment to be collateral security for payment and discharge in full of any and all of the Primary Obligations.

5.   **Lien Subordination.**  To the extent that any or all of the Subordinated Obligations are secured by any assets of Borrower, then such lien, security interest or encumbrance and all collateral documents in connection therewith, and all modifications, amendments, consolidations thereto, and all rights of Creditor to receive insurance proceeds and condemnation awards in connection therewith, are subordinated and made junior to all liens, security interests or encumbrances of the Lender in any and all assets and property of Borrower, whether real or personal, tangible or intangible, wherever located, and whether now owned or hereafter acquired.  This subordination is effective notwithstanding (i) the priorities that would ordinarily result from the order of granting or attaching or the order of filing or recording any financing statement, deed or other instrument (or any failure to do so); (ii) the enforceability of any of Lender's liens, security interests or encumbrances; and (iii) the bankruptcy, reorganization or other insolvency proceeding of Borrower. Creditor waives any right it may have to assert that Lender should marshal assets subject to a lien securing the Primary Obligations.

6.   **Subordinated Instrument.**  Creditor agrees not to demand or receive any new note, certificate of stock, or other instrument evidencing the Subordinated Obligations or any part thereof while this Agreement is in effect without the prior written consent of Lender.  Creditor agrees to hold in trust for, and to endorse and immediately deliver to, Lender, any and all such notes, certificates of stock or other instruments which may be received by Creditor with or without demand by Creditor, or without the prior written consent of Lender, or to the acceptance of which Lender may hereafter so consent.  Creditor agrees that any and all such notes, certificates of stock or other instruments which may be delivered to Lender as set forth herein or otherwise may be held by Lender, subject to the terms and conditions of this Agreement.  If the Subordinated Obligations are not evidenced by an instrument in writing, Creditor and Borrower agree, at Lender's request, to reduce the Subordinated Obligations to writing and Creditor further agrees to endorse such instruments as aforesaid.  Creditor shall legend any documents evidencing the Subordinated Obligations, any security documents and/or financing statements to indicate that the Subordinated Obligations and, as applicable, any liens, security interests or encumbrances securing the Subordinated Obligations, are subject to the terms of this Agreement.

7.   **Standstill Covenants.**  Creditor hereby covenants, as long as this Agreement is in effect, that Creditor will not, unless and until the Primary Obligations are fully and irrevocably paid and satisfied and all financial and other arrangements between Lender and Borrower have been terminated, and prior thereto, without Lender's prior written consent: (i) accelerate, request, demand, take, accept, or receive from or on behalf of Borrower, by setoff or in any other manner, any monies representing all or any part of the Subordinated Obligations except as may be expressly permitted by this Agreement; (ii) initiate or participate with others in any suit, action, or proceeding, including, without limitation, any bankruptcy, reorganization, or insolvency proceeding against Borrower, or exercise any other rights or remedies to collect or enforce the Subordinated Obligations; (iii) repossess, foreclose upon, or otherwise take any action against, or exercise any rights or remedies with respect to, any collateral securing all or any part of the Subordinated Obligations; (iv) request, demand, take, accept, or receive any security for the Subordinated Obligations, other than as provided in any collateral documents in effect on the date hereof; (v) enter into any other subordination agreement with respect to any of the Subordinated Obligations or assign, transfer, pledge or otherwise dispose of the Subordinated Obligations or any portion thereof, other than with Lender; or (vi) release, surrender, exchange, or permit a discharge of, or change any term or condition of, any of the Subordinated Obligations.  Without in any way limiting the general application of the covenants above, Creditor hereby specifically agrees, without limitation, as follows: Creditor shall not, at any time (i) assert, claim or raise any challenge or objection to Lender's priority over Creditor with respect to debts owed by, and liens on assets of, Borrower, as provided for in this agreement; (ii) assert, claim or raise any challenge or objection to, or take any action to delay, any sale, liquidation or other disposition, supported by Lender, of any assets that constitute, or purportedly constitute, collateral securing the Primary Obligations; (iii) in the context of any bankruptcy, reorganization or insolvency proceeding involving Borrower and/or Borrower's assets, assert, claim or raise any challenge or objection to (a) any cash collateral or adequate protection arrangement supported by Lender, (b) any debtor-in-possession financing arrangement supported by Lender, or (c) any reorganization plan supported by Lender, nor shall Creditor support or vote in favor of any such arrangement or plan that Lender opposes.

8.   **Authorizations & Waivers.**

a.   This Agreement is a continuing agreement and Creditor authorizes Lender, without notice or demand and without affecting Creditor's obligations hereunder, from time to time:  (i) to renew, extend, increase, accelerate or otherwise change the time for payment of the terms of or the interest on the Primary Obligations, or any part thereof, and to modify or amend any other term or condition in the document(s) or instrument(s) which may evidence the Primary Obligations from time to time; (ii) to take from any party (including Borrower) and hold collateral (other than the Subordinated Obligations) for the payment of the Primary Obligations, or any part thereof, and to exchange, enforce or release such collateral or any part thereof; (iii) to accept and hold any endorsement or guaranty of payment of the Primary Obligations, or any part thereof and to release or substitute any such endorser or guarantor, or any party (including Borrower) who has given any security interest in any collateral as security for the payment of the Primary Obligations, or any part thereof, or any other party in any way obligated to pay the Primary Obligations, or any part thereof; (iv) to direct the order or manner of the disposition of any and all other collateral and the enforcement of any and all endorsements and guaranties relating to the Primary Obligations, or any part thereof, as Lender, in its sole discretion, may determine; (v) to exercise or refrain from exercising any rights or remedies against Borrower or any other person or waive any Event of Default; and (vi) to exercise, or refrain from exercising, any rights or remedies under this Agreement which is directly or indirectly conditioned upon the occurrence of an Event of Default even if the Lender waives such Event of Default or refrains from taking action against Borrower or any other person based upon such Event of Default.

b.   To the fullest extent permitted by applicable law, Creditor waives (i) any defense based on or arising out of any defense of Borrower or the unenforceability of the Primary Obligations or any part thereof from any cause, or the cessation from any cause of the liability of Borrower (other than the final and indefeasible payment in full in cash of the Primary Obligations) and (ii) presentment to, demand of payment from and protest to Borrower of any of the Primary Obligations, and also waives notice of acceptance and notice of protest for non-payment.  To the fullest extent permitted by applicable law, the obligations of Creditor hereunder shall not be affected by (a) the failure of Lender to assert any claim or demand or to enforce or exercise any right or remedy against Borrower; (b) any rescission, waiver, amendment or modification of any agreement with Borrower; or (c) the failure to perfect any security interest in, or the release of, any security held by Lender with regard to the Primary Obligations.  The obligations of Creditor and the rights of Lender hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the indefeasible payment in full in cash of the Primary Obligations), including any claim of waiver, release, surrender, alteration or compromise of any of the Primary Obligations and shall not be subject to any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Primary Obligations or otherwise.  Without limiting the generality of the foregoing, the obligations of Creditor hereunder shall not be discharged, impaired or otherwise affected by the failure of Lender to assert any claim or demand or to enforce any remedy under its agreements with Borrower, by any waiver or modification of any provision thereof, by any default, failure or delay, willful or otherwise, in the performance of the Primary Obligations, or by any other act or omission that may or might in any manner or to any extent vary the rights of Creditor or that would otherwise operate as a discharge of Creditor's obligations or Lender's rights against Creditor as a matter of law or equity (other than the indefeasible payment in full in cash of all of the Primary Obligations).

9.   **Rights of Lender.**

a.   To enable Lender to assert and enforce its rights under this Agreement, upon the occurrence of an Event of Default, Lender is hereby irrevocably appointed attorney-in-fact for Creditor, and subrogated to the rights and claims of Creditor, with regard to the Subordinated Obligations with full power to act in the place and stead of Creditor including the right (i) to demand, collect, compromise and receive payment of the Subordinated Obligations or any part thereof; (ii) to make, present, file and vote such proofs of claim against Borrower on account of all or any part

of the Subordinated Obligations in any proceeding (formal or informal) with respect to the receivership, bankruptcy, reorganization, arrangement, assignment for the benefit of creditors, adjustment of debts, insolvency or liquidation of Borrower, regardless of the existence or value of any collateral held by Lender as collateral for payment of the Primary Obligations, including, without limitation, voting such claims at any meeting of creditors of Borrower and voting such claims for or against any proposed plan in any such proceeding, all as Lender deems appropriate to protect its interest; and (iii) to demand, sue for, receive and collect any and all dividends or other payments made on the Subordinated Obligations and to apply the same on account of the Primary Obligations (including, without limitation, any fees and expenses incurred by Lender including attorneys' fees) before application to the Subordinated Obligations.  By execution and delivery of this Agreement, Lender has the full power and authority, but not the obligation, to take any and all acts as may be necessary to enforce any and all of the Subordinated Obligations, to exercise any rights as assignee of any security for payment of the Subordinated Obligations, to effectuate the aforesaid power of attorney, and to effect collection of any and all dividends or other payments which may be made or required at any time on account thereof; and no further documents or instruments of any kind whatsoever shall be required to effectuate Lender's rights under this Agreement or to implement the provisions of this Agreement.

b.    In the event Borrower is the subject of a bankruptcy or similar type of insolvency proceeding, Creditor consents (and shall not object) to the entry of orders or stipulations providing for the granting of post-petition liens to Lender, other forms of adequate protection (including super-priority status), and the use of cash collateral or borrowing terms satisfactory to Lender, and Creditor will not object to or appeal from any such stipulations or orders.

c.    After an Event of Default, in the event of any sale or disposition of any collateral securing the Subordinated Obligations, Creditor shall execute and deliver to Lender and/or Borrower all such consents, releases, assignments and other instruments with respect to such collateral, including, without limitation, UCC-3 partial releases or termination statements or mortgage satisfactions, as Lender may request in order to effect such sale or disposition.

d.    Creditor shall not have any right to contest any of the procedures or actions taken by Lender to foreclose or liquidate any collateral held by Lender (whether under this Agreement or otherwise), including, without limitation, any price or other terms of sale of such collateral, or to enforce any of Lender's other rights and remedies with respect thereto.

e.    If Creditor shall commence, prosecute, or participate in any suit, action, or proceeding against Borrower or Lender, in violation of this Agreement, or shall attempt to enforce, foreclose upon or realize upon any collateral securing all or any part of the Subordinated Obligations, Borrower or Lender may (but is not obligated to) interpose as a defense the terms and conditions of this Agreement, and Lender may intervene and interpose such defense in its name or in the name of Borrower.

10.    **Representations and Warranties.**  Creditor hereby represents and warrants as follows:

a.    There exists no events of default under the Subordinated Obligations, or events or conditions which with the passage of time, the giving of notice, or both, would constitute an event of default under the Subordinated Obligations and the Subordinated Obligations are not subject to any offset, counterclaim or defense.

b.    The outstanding principal amount of the Subordinated Obligations as of the date of this Agreement is set forth on Schedule A.

c.    Creditor has all requisite power to enter into this Agreement and to carry out the provisions hereof and has duly authorized the execution and delivery of this Agreement.  The execution and delivery of this Agreement and the performance of the obligations hereunder do not violate any provision of law, any order, rule or regulation of any court or governmental agency or its charter, articles of incorporation, bylaws or other relevant organization documents or constitute a default under any agreement or other instrument to which it is a party or by which it is bound.  Creditor has duly executed and delivered this Agreement and it constitutes a legal, valid and binding obligation enforceable against it in accordance with its terms and no consent, license, approval, or authorization of, or registration, declaration, or filing with, any court, governmental body, authority, or other person or entity is required in connection with the valid execution, delivery and performance of this Agreement, other than filings and recordings in connection with this Agreement.

d.    Creditor has not previously assigned, transferred, or granted any interest in the Subordinated Obligations to any party, no party owns an interest in the Subordinated Obligations other than Creditor, whether as a joint holder of the Subordinated Obligations, a participant, or otherwise, the entire Subordinated Obligations are owing to Creditor, and the Subordinated Obligations shall continue to be owing only to Creditor.

11.    **Further Assurances.**  Creditor agrees to execute and deliver to Lender such other and further powers of attorney or other documents, instruments, agreements or writings as Lender may request at any time or from time to time in order to effectuate the terms and conditions of this Agreement.

12.    **Notice of Default.**  Creditor agrees to give Lender notice of any default by Borrower of any of Borrower's obligations to Creditor.

13.    **Specific Performance.**  Lender is hereby authorized to demand specific performance of this Agreement at any time when Creditor shall have failed to comply with any of the provisions of this Agreement.  Creditor hereby irrevocably waives any defense based on the adequacy of a remedy at law, or any other defense which might be asserted as a bar to such remedy of specific performance.  Further, the parties acknowledge that breach of this Agreement by Creditor could cause irreparable harm to Lender for which there may be no adequate remedy at law; and, therefore, Lender is entitled to injunctive relief in the event of an anticipated or actual breach by Creditor of the terms hereof.

14.    **Notices.**  Any demand or notice hereunder or under any applicable law pertaining hereto shall be in writing and duly given if delivered to Creditor (at its address on the Lender's records) or to the Lender (at the address on page one and separately to the Lender officer responsible for Borrower's relationship with the Lender).  Such notice or demand shall be deemed sufficiently given for all purposes when delivered (i) by personal delivery and shall be deemed effective when delivered, or (ii) by mail or courier and shall be deemed effective three (3) business days after deposit in an official depository maintained by the United States Post Office for the collection of mail or one (1) business day after delivery to a nationally recognized overnight courier service (*e.g.*, Federal Express).  Notice by e-mail is not valid notice under this or any other agreement between Creditor and the Lender.

15.    **Information.**  Creditor assumes all responsibility for being and keeping itself informed of Borrower's financial condition and assets, and of all other circumstances bearing upon the risk of non-payment of the Primary Obligations and the Subordinated Obligations and the nature, scope and extent of the risks that Creditor assumes and incurs hereunder, and agrees that Lender will not have any duty to advise Creditor of information known to it regarding such circumstances or risks.

16. **Miscellaneous.**

   a.   This Agreement contains the entire agreement between Lender and Creditor with respect to this subordination, and supersedes every course of dealing, other conduct, oral agreement and representation previously made by Lender. All rights and remedies of Lender under applicable law and this Agreement or amendment of any provision hereof are cumulative and not exclusive. No course of dealing between Creditor and the Lender and no delay or omission by the Lender in exercising any right or remedy hereunder or with respect to any Primary Obligations shall operate as a waiver thereof or of any other right or remedy, and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right or remedy Lender, Borrower and Creditor as used herein shall include the heirs, executors or administrators, or successors or assigns, of those parties. No modification, rescission, waiver, release or amendment of any provision of this Agreement shall be made except by a written agreement subscribed by Creditor and by a duly authorized officer of Lender. If a court deems any provision of this Agreement to be void, the remainder of the Agreement shall remain in effect. Section headings are for convenience only. Borrower agrees that in any legal proceeding, a copy of this Agreement kept in the Lender's course of business may be admitted into evidence as an original. Singular number includes plural and neuter gender includes masculine and feminine as appropriate.

   b.   Lender shall have no obligation to collect the Subordinated Obligations. Further, Lender shall have no obligation whatsoever for maintenance, protection, preservation or liquidation of any security for the Subordinated Obligations.

   c.   Creditor has, to the extent deemed necessary by Creditor, reviewed the existing Agreements between Lender and Borrower, as such have been presented to Creditor by Borrower, and understands that there is no commitment or obligation on Lender's part to make any loans or advances or to extend credit to Borrower except as may be contained in current and presently effective written agreements between Lender and Borrower; provided, however, that Creditor further understands that such agreements may be modified, altered, or amended, without notice to or consent of Creditor.

   d.   Creditor agrees to pay all costs and expenses (including attorneys' fees) which Lender may incur in protecting or enforcing any of its rights hereunder and/or against Creditor.

   e.   All terms, unless otherwise defined in this Agreement, shall have the definitions set forth in the Uniform Commercial Code, as the same may be in effect in the Commonwealth of Pennsylvania, as amended from time to time.

17. **Joint and Several.**  If more than one party executes this Agreement, the term "Creditor" shall include each as well as all of them and their obligations, warranties and representations hereunder shall be joint and several. If there is more than one Borrower, then the term "Borrower" shall include each as well as all of them.

18. **Governing Law and Jurisdiction.**  This Agreement has been delivered to and accepted by Lender and will be deemed to be made in the Commonwealth of Pennsylvania. Except as otherwise provided under federal law, this Agreement will be interpreted in accordance with the laws of the Commonwealth of Pennsylvania excluding its conflict of laws rules. **CREDITOR HEREBY IRREVOCABLY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE COMMONWEALTH OF PENNSYLVANIA IN A COUNTY OR JUDICIAL DISTRICT WHERE LENDER MAINTAINS A BRANCH AND CONSENTS THAT LENDER MAY EFFECT ANY SERVICE OF PROCESS IN THE MANNER AND AT CREDITOR'S ADDRESS SET FORTH ABOVE FOR PROVIDING NOTICE OR DEMAND; PROVIDED THAT NOTHING CONTAINED IN THIS AGREEMENT WILL PREVENT LENDER FROM BRINGING ANY ACTION, ENFORCING ANY AWARD OR JUDGMENT OR EXERCISING ANY RIGHTS AGAINST CREDITOR INDIVIDUALLY, AGAINST ANY SECURITY OR AGAINST ANY PROPERTY OF CREDITOR WITHIN ANY OTHER COUNTY, STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION.** Creditor acknowledges and agrees that the venue provided above is the most convenient forum for both Lender and Creditor. Creditor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Agreement.

19. **Trial by Jury.**  **CREDITOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY CREDITOR OR LENDER MAY HAVE IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, IN CONNECTION WITH THE TRANSACTION DOCUMENTS OR THE TRANSACTIONS RELATED THERETO. CREDITOR REPRESENTS AND WARRANTS THAT NO REPRESENTATIVE OR AGENT OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WILL NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THIS RIGHT TO JURY TRIAL WAIVER.**

_Tiara Lea Goodling_
Signature of Witness
Tiara Lea Goodling
Typed Name of Witness

GROWMARK FS, LLC

By: _Lynne Strauser_

Name: _Lynne Strauser_

Title: _Field Credit Mgr._

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA    )
                                : SS.
COUNTY OF _Snyder_____)

On the _25th_ day of _July_____, in the year 20 _17_____, before me, the undersigned, a Notary Public in and for said Commonwealth, personally appeared _Lynne Strawser_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

```
COMMONWEALTH OF PENNSYLVANIA
        NOTARIAL SEAL
Tiara Lea Goodling, Notary Public
Selinsgrove Boro, Snyder County
My Commission Expires Aug. 10, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES
```

_Tiara Lea Goodling_
                                            Notary Public

---

LENDER USE ONLY

Authorization Confirmed: _____

                                    Signature

**SCHEDULE A**

**Description of Subordinated Obligations (§1(b))**

Loan Number 1285331500
Loan Number 1285331600
Loan Number 1297070600
Loan Number 1297070700

All secured under security agreement and UCC-1 Financing Statement filed with the Pennsylvania Department of State at 22011042803932 and continued by a UCC-3 Financing Statement at 2016031801432

## BORROWER'S AGREEMENT

The undersigned Borrower, mentioned in the foregoing General Subordination Agreement, hereby acknowledges receipt of a copy thereof, acknowledges that the Subordinated Obligations mentioned therein are payable as stated therein, and agrees (i) to make no payment on the Subordinated Obligations so long as there are any outstanding Primary Obligations, except such payments specifically permitted in Section 2 of the Subordination Agreement, without Lender's consent; (ii) not to issue any note or other instrument evidencing the Subordinated Obligations, to give any security therefor, or accept any extension, renewal, refinancing, release or modification thereof; and/or (iii) that the Subordinated Obligations are not subject to any counterclaim, setoff or defense. If there are more than one undersigned, the term "Borrower" herein and in the Subordination Agreement shall include each as well as all of them, and their obligations hereunder and under the Subordination Agreement shall be joint and several.

Date:_____ , 2017

WITNESS

_____         _____
                                          LARRY RICHARD FREDERICK a/k/a

_____         _____
                                          LARRY R. FREDERICK

_____         _____
                                          SHARON E. FREDERICK

### ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA  )
                             : SS.
COUNTY OF BLAIR               )

On the _____ day of _____, in the year 2017, before me, the undersigned, a Notary Public in and for said Commonwealth, personally appeared Larry Richard Frederick a/k/a Larry R. Frederick and Sharon E. Frederick, husband and wife, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their capacities, and that by their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

---

LENDER USE ONLY

Authorization Confirmed: _____
                                          Signature