**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| LARRY FREDERICK and SHARON ) | |
| FREDERICK, ) | |
| ) | CASE NO. 18-70870-JAD |
| Debtors. ) | |
| ) | Doc. No. _____ |
| M&T BANK ) | |
| ) | Related to Doc. Nos. 88, 102 |
| Movant, ) | |
| ) | Hearing Date: Tuesday, July 14, 2020 at |
| v. ) | 10:00 a.m. |
| ) | |
| LARRY FREDERICK and SHARON ) | |
| FREDERICK, ) | |
| ) | |
| Respondents. ) | |

**REPLY TO THE DEBTORS' RESPONSE TO**
**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

M&T Bank, by and through its undersigned counsel, submits this Reply (this "Reply") to the above-captioned Debtors' Response (the "Response") to M&T Bank's Motion for Relief from the Automatic Stay (the "Motion"), stating as follows:

1. The Response takes issue with the Motion on several grounds, yet does not directly address the grounds for relief from the stay set forth in the Motion.

2. Instead, much of the Response provides a revisionist history narrative of the interactions among a relative of the Debtor, M&T Bank, and M&T Bank and Debtor's respective counsel throughout the course of this case, in an attempt, for some unexplained reason, to allege that M&T Bank "agreed to" two proposals for the sale of the Debtors' assets, only to later "renege." That narrative, however, conveniently omits certain facts and distorts others, and in any event, provides no defense to the relief from stay Motion.

3. The Response states that the "main point of contention from the beginning has been whether or not the Joint Debtors should liquidate their assets through an auction process." Response at 2. On the contrary, M&T Bank's focus has always been on a *fair* sale process that would produce a purchase price reflective of market value. Even though the Debtors acknowledge that they have no option but to liquidate their assets, they have steadfastly resisted exposing their assets to the market. At this late date and only in response to a relief from stay motion, the Debtors, rather than undertake a fair sale process, seek to sell substantially all of their assets (or at least all of their assets subject to M&T Bank's liens) to an insider for a price that is well below fair market value.

4. The Response claims that "during a phone call during the third week of September 2019, M&T expressly agreed to support a private sale of the Joint Debtors' assets to [Rodney] Metzler for the total consideration of $3,100,000." Response at 4.

5. Though M&T Bank did indicate initial support for a sale at $3,100,000, it did so under the impression that Metzler would be purchasing only the M&T Collateral.[1] Despite repeated requests, Metzer never submitted a proposal in writing. Only later, after Metzler presented a vague email did it become apparent that Metzler was talking about purchasing *all* of the Debtors' assets, and thus only a portion of the proposed purchase price would be available to satisfy M&T Bank's claims. Clearly, there was never any meeting of the minds. Why the Debtors think M&T Bank's willingness to consider a $3,100,000 proposal that would be helpful to the Debtors is relevant to the relief from stay Motion is baffling, especially since they are now proposing to sell M&T Bank's Collateral to their son for $500,000 less.

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

6. But the Response goes on to further distort the facts by alleging that in April of 2020, M&T Bank "agreed to support a sale of their collateral to Mr. Metzler for consideration in the amount of $2,600,000," which agreement is purportedly evidenced by emails attached to the Response. See id.

7. Initially, it should be noted that the email chains attached to the Response are not complete, and the attached portions conveniently omit salient portions of the colloquy, although the correspondence is still irrelevant to the relief from stay issues.

8. Regardless of that incompleteness, the emails attached to the Response show that although the parties discussed a sale at $2,600,000, once again, there was a lack of detail about specifically which assets would be included in such sale and how the proceeds would be allocated. Indeed, the attached emails show M&T Bank requesting that Metzler provide specific sale agreement terms. No such specifics were ever furnished. When Metzler finally furnished a reasonably specific proposal, it proposed to purchase only 1098 Frederick Road for a purchase price of $1,000,000—less than half of that parcel's appraised value.

9. The Response focuses solely on the total sale price without regard for any contextual details about exactly which assets were to be purchased. Had it known the details in April 2020, M&T Bank would not even have engaged in discussions about a sale to Metzler, Eric, or any other insider on the terms proposed in the Debtor's plan, just as it does not support such a sale now. But M&T Bank's willingness to discuss a proposal that might benefit the Debtors does not mean M&T Bank is not entitled to relief from the stay.

10. Beyond the foregoing objections, the Response does little to address the substantive grounds for relief set forth in the Motion.

3

11. As set forth in detail in the Motion, M&T Bank is entitled to relief from the automatic stay either (i) for cause under 11 U.S.C. § 362(d)(1) or (ii) under § 362(d)(2) because the Debtors' lack equity in the M&T Collateral and the M&T Collateral is not necessary for an effective reorganization. The Response confirms that there is no equity in M&T Bank's Collateral and tacitly agrees that the Collateral is not necessary for an effective reorganization. Indeed, it provides additional evidence and support for why the Debtors cannot reorganize and must liquidate their assets.

12. The Motion includes detailed averments regarding the value of the M&T Collateral and the balances of the Debtors' various loans owed to M&T Bank. See Motion at ¶¶ 33, 46-50 (ECF No. 88).

13. The Debtors' only responses to those averments are to (i) claim there is no market for their real property based on an over one-year-old opinion letter, (ii) object to the interest rates and attorneys' fees allegedly owed to M&T Bank, and (iii) reassert that M&T Bank previously agreed to a $2,600,000 sale. See Response at ¶¶ 33, 46-50 (ECF No. 102).

14. The assertion that "there is almost no market for the Joint Debtors' real estate [and] [t]hus, any attempt to put a value on the same is speculative" is ironic and inaccurate. In a June 9, 2020 email forwarded by counsel for the Debtors (the "FSA Email"), a representative of FSA indicated that Eric's financing arrangement was tentatively approved but conditioned on completion of an "adequate appraisal." FSA goes on to indicate it will look to get the appraisal from "Brian Petrick" of "Agarin Associates" which appear to be misspellings of "Brian Pedrick" and "Agrarian Associates." Coincidentally, it was Brian D. Pedrick of Agrarian Associates, Inc. who produced the appraisals upon which the values in paragraphs 33 and 47 of the Motion are based. Apparently, the Debtors view a valuation as speculative until it stands to advance the

Debtors' interests. Moreover, Brian Pedrick is prepared to testify that an auction of the Debtors' farm land is likely to generate some interested bidders.

15. In reference to the amounts due to M&T Bank pursuant to the Judgment, the Response asserts that "interest should be capped at 6% in the event M&T is entitled to interest at all" and "the Joint Debtors have and continue to object to unearned attorneys' fees in the amount of $338,278.31." Response at ¶ 46.

16. Regarding interest, the Response appears to refer to the legal rate of interest applicable to judgments in Pennsylvania. See 42 Pa. C.S.A. § 8101; 41 P.S. § 202. The Judgment, however, was entered by the United States District Court for the Western District of Pennsylvania, and therefore the Pennsylvania judgment interest rate is not applicable. Moreover, the Judgment itself specifically says it is in the amount of "$3,726,542.61, plus additional interest accruing at the default rates set forth in the Notes (as defined in the Complaint in Confession of Judgment) from and after November 29, 2018, until paid in full, plus costs of suit." See Ex. 1 to the Motion, Part 4 at 25.

17. As to attorneys' fees, the amount stated in the Judgment represents the 10% attorneys' commission that the Debtors' agreed to by executing the M&T Notes. Moreover, on at least three occasions the United States District Court for the Western District of Pennsylvania has upheld the standard attorney's commission provision in M&T Bank's loan documents. See Mem. Op. at 4, Manufacturers and Traders Trust Company v. Minuteman Spill Response, Inc., 3:14-mc-18 (W.D. Pa. Sept. 2, 2015) ("The Court finds that the amounts included in the judgment were authorized by the warrant of attorney contained in the Minuteman Notes . . . [and] that the amount of attorney's fees awarded in the confession of judgment is not excessive. The Notes signed by Minuteman specifically authorized the award of attorney's fees."); Mem. Order, Manufacturers

and Traders Trust Company v. Villarial[2], 3:09-mc-52 (W.D. Pa. Jan. 14, 2010) (ECF No. 7) (finding that "the attorney fees were reasonable in accordance with the Note defendant agreed to, and were not excessive"); Mem. Order at 4-5, Manufacturers and Traders Trust Company v. George, 2:09-mc-00255-DSC (W.D. Pa. Dec. 14, 2019) (ECF No. 11) ("The amount of the attorney commission in the Judgment was specifically authorized in the Note, and therefore is neither a defect nor an irregularity on the face of the record.  Moreover, the Court is unable to find that the attorney fee in the [sic] this instance is excessive."); see also RAIT Partnership, LP v. E Pointe Properties I, Ltd., 957 A.2d 1275, 1279 (Pa. Super. Ct. 2008) (upholding 15% attorney's collection commission).  Accordingly, any objection to the attorney's fees provided for in the Judgment rings hollow, and such fees are appropriately included in the aggregate total owed by the Debtors' to M&T Bank.

18.    Additionally, after unilaterally reducing the amount of their monthly adequate protection payments to M&T Bank for March, April, and May 2020, as described in paragraph 27 of the Motion, the Debtors sent M&T Bank a check in the amount of $4,000.00 on June 26, 2020 (not coincidentally after M&T Bank filed its relief from stay Motion).  M&T Bank presumes the check was an untimely adequate protection payment, but cannot be sure as it was furnished without any communication or explanation.  What it really shows is that the Debtors, as they have done throughout this case, continue to act unilaterally and do what they believe is most convenient for them without regard for the rights of M&T Bank, the law or the bankruptcy process.  The Debtors got away with that for a year and a half, but it is now time for it to end.  Regrettably, during that time they failed to come up with a realistic or acceptable solution.

---

[2] The defendant in this case was a client of the Lampl Law Office.

19. Accordingly, for the reasons set forth both herein and in the Motion, M&T Bank is entitled to relief from the automatic stay under § 362(d)(1) and (d)(2).

WHEREFORE, M&T Bank respectfully requests that this Honorable Court overrule the Response, grant the Motion in its entirety, enter an order substantially in the form attached to the Motion, and grant such other or further relief the Court deems just and proper.

Respectfully submitted,

DENTONS COHEN & GRIGSBY P.C.

Dated: July 13, 2020

By: */s/ William E. Kelleher, Jr.*
William E. Kelleher, Jr.
Pa I.D. 30747
Daniel P. Branagan
Pa I.D. 324607
625 Liberty Avenue
Pittsburgh, PA 15222-3152
Phone: (412) 297-4900
Fax:    (412) 209-0672
bill.kelleher@dentons.com
daniel.branagan@dentons.com

*Counsel for M&T Bank*

3380110

# **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing was electronically filed and accordingly was served upon all parties currently registered to receive electronic notices via this Court's CM/ECF Notification system. In addition, the undersigned caused a copy of the foregoing to be served upon the following parties in the manner indicated on this 13th day of July 2020.

**Via Electronic Mail**

Robert O Lampl, Counsel for Debtors
rol@lampllaw.com, jschemm@lampllaw.com, jlacher@lampllaw.com, jcooney@lampllaw.com, rcooney@lampllaw.com, slampl@lampllaw.com, aholmquist@lampllaw.com, kmonahan@lampllaw.com

Larry E. Wahlquist, Office of the United States Trustee
Larry.E.Wahlquist@usdoj.gov

*/s/ William E. Kelleher, Jr.*
William E. Kelleher, Jr.