## PURCHASE AND SALE AGREEMENT

This PURCHASE AND SALE AGREEMENT (this "**Agreement**"), dated as of the 26th day of January, 2021 (the "**Effective Date**"), is made by and between **Larry and Sharon Frederick**, husband and wife, with a mailing address of 1098 Frederick Road, Martinsburg, PA 16662 ("**Seller**"), and **Mark A. and Megan E. Frederick**, husband and wife, with a mailing address of 354 Emmert Lane, Martinsburg, PA 16662 ("**Purchaser**").

### WITNESETH:

WHEREAS, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code was filed by Seller in the United States Bankruptcy Court for the Western District of Pennsylvania (the "**Bankruptcy Court**") which is being administered at Bankruptcy No. 18-70870 ("**Bankruptcy Case**");

WHEREAS, Seller is the owner of a certain plot, piece or parcel of land situate and being in the Township of Taylor and Commonwealth of Pennsylvania (the "**Property**"), all are more particularly described on "Exhibit A" attached hereto; and

WHEREAS, Seller desires to sell the Property to Purchaser, and Purchaser desires to purchase the Property from Seller, in accordance with the terms and conditions of this Agreement;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the parties agree as follows:

Section 1: SALE OF THE PROPERTY.

Sale and Purchase. Subject to the terms hereof, Seller shall sell, convey and assign to Purchaser, or its assigns, free and clear of all liens, claims and encumbrances, and Purchaser shall purchase, take and accept from Seller, all of Seller's right, title, and interest in and to the Property (the "Sale").

The Property Description. The Property to be conveyed shall include the following:

(i) the land described in "Exhibit A" (the "Land");

(ii) all right, title and interest, if any, of Seller in and to any land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof, and all right, title and interest of Seller, if any, in and to any award for any taking by condemnation, or for damage to the Property by reason of change of grade of any street or highway;

(iii) any and all easements, rights of way or use, privileges, licenses, appurtenances and rights to the same thereunto belonging to or inuring to the benefit of Seller and pertaining to the Property;

# EXHIBIT D

(iv) any and all right, title and interest of Seller in any strips or gores adjacent to or abutting the Land or any portion thereof;

(v) all sewer, water, and other utility capacity allocated by any public or private utility authority to serve or currently serving the Property;

(vi) any reversionary rights attributable to Seller with respect to the Property;

(vii) any and all transferable consents, authorizations, variances or waivers;

Agreement to Convey Property. Seller agrees to sell and convey, and Purchaser agrees to purchase and accept, the Property by the Special Warranty Deed (as hereinafter defined), with title as described in Section 4 hereof.

Section 2: PURCHASE PRICE.

The purchase price for the Property (the "Purchase Price") shall be Eight Hundred Fifty Thousand Dollars ($850,000.00) and shall be payable as follows:

Within three (3) business days following the execution and delivery of this Agreement by Purchaser and Seller, Purchaser shall make a deposit in the amount of Five Thousand Dollars ($5,000.00) (the "Deposit") with McQuaide Blasko, Inc., at 601 Hawthorne Drive, Suite 2A, Hollidaysburg, PA 16648 (the "Escrow Agent"), to be held in escrow as hereinafter provided and becoming non-refundable at the expiration of any contingencies described below.

The balance of the Purchase Price, subject to adjustment as provided herein, shall be paid on the Closing Date, by federal funds wire transfer to a bank account as Seller shall designate.

Section 3: CONTINGENCIES.

Closing is contingent upon:

a) Seller and Purchaser having obtained a final, non-appealable Order of Court approving the sale free and clear of all liens, claims and encumbrances.

Section 4: TITLE.

(i) It shall be a condition precedent to Purchaser's obligation to complete Closing hereunder that at the Closing, title to the Property shall be free and clear of all defects, liens, encumbrances, covenants, restrictions and easements, excepting only: (i) general real estate taxes not yet due and payable (ii) acts done or suffered by or against Purchaser (iii) water, sewer, gas, electric, cable television, telephone, fiber optic and other utility lines as are currently installed, (iv) reservations or leases of coal, oil, gas and other minerals and (v) minor discrepancies and imperfections of title that do not materially impair the use or marketability of the Property; (collectively, the "Permitted Exceptions"). Otherwise title to the Property shall be good and marketable and insurable at such regular rates by a title company authorized to do business in Pennsylvania. If Seller shall be unable or unwilling to convey fee title to the Property in accordance

with the foregoing requirements, Purchaser may elect in writing on or before the Closing Date to accept such title as Seller can convey, in which case Closing shall proceed, subject to all of the other terms and conditions of this Agreement, but without any abatement or reduction of the consideration for the Property, and without any liability of Seller to Purchaser as a result thereof. If Purchaser shall not elect to take title subject to exceptions other than the Permitted Exceptions then this Agreement shall terminate and be null and void and neither party shall have any obligation or liability in connection with this Agreement and Escrow Agent shall return the Deposit and all interest earned thereon to Purchase

        (ii)    Purchaser shall order from the Escrow Agent a commitment to insure title to the Property (the "Commitment") and shall deliver a copy thereof to Seller promptly upon receipt. If the Commitment reflects or discloses any defect, exception, or other adverse matter affecting the Property ("Title Defects") that are unacceptable to Purchaser, then Purchaser shall provide Seller with written notice of Purchaser's objections to the Title Defects within thirty (30) days of execution of this Agreement (the "Objection Notice"). Seller will notify Purchaser of its election to remove a Title Defect within five (5) days of Seller's receipt of an Objection Notice from Purchaser. If Seller fails to notify Purchaser as aforesaid that Seller will remove any Title Defect on or before Closing, Purchaser as its sole remedy and at its sole option may (i) proceed to the Closing and take title subject to such Title Defect with no adjustment of the Purchase Price, or (ii) terminate this Agreement, in which case this Agreement will terminate and be null and void and neither party shall have any obligation or liability in connection with this Agreement (except for any liability which expressly survives Closing hereunder) and Escrow Agent shall return the Deposit to Purchaser.

### Section 5: SELLER'S REPRESENTATIONS.

All representations, warranties and covenants herein are conditioned upon and/or subject to final unappealable Order of the Bankruptcy Court approving the Sale. To induce Purchaser to enter into this Agreement, Seller represents, warrants and covenants to Purchaser as of the date hereof and as of the Closing Date as follows:

<u>Authorization and Execution</u>. Seller has all requisite power and authority to enter into and perform the obligations hereunder and under any document or instrument required to be executed and delivered on behalf of Seller.

<u>Title</u>. Seller is the sole owner of fee simple title to the Property and has good and marketable fee simple title to the Property, free and clear of all liens and encumbrances, except for the Permitted Exceptions.

### Section 6: PURCHASER'S REPRESENTATIONS.

Purchaser represents to Seller that:

<u>Authority</u>. Purchaser has full right, power and authority to enter into, execute and deliver this Agreement, and to perform the obligations hereunder.

<u>Consent</u>. No consent, approval, authorization, order, registration or qualification of or by any

Person, including, without limitation, any governmental or regulating authority, is required in connection with the execution, delivery and performance by Purchaser of this Agreement and/or the consummation of the transaction, which has not been obtained.

Execution of Agreement. Neither the execution and delivery of this Agreement, or any other documents necessary to complete this transaction, nor the consummation of the transaction, nor the fulfillment of or compliance with the terms and conditions hereof shall: (i) violate, be in conflict with, constitute a default under, cause the acceleration of any payments pursuant to, or otherwise impair the good standing, validity, or effectiveness of any agreement, contract, indenture, or mortgage, to which Purchaser is bound; or (ii) to the best of Purchaser's knowledge, violate any provision of law, rule, regulation, order, permit, or license to which Purchaser is subject or pursuant to which Purchaser conducts its business.

Section 7: CLOSING.

(a) Closing. The consummation of the transactions contemplated hereby (the "**Closing**") shall take place within fifteen (15) days of a final, non-appealable Confirmed Order of Sale in accordance with Bankruptcy Code Section 363 at 601 Hawthorne Drive, Suite 2A, Hollidaysburg, PA 16648 or at such other place and time as may be mutually agreed to by the parties (the "Closing Date"). All proceedings to be taken and all documents to be executed and delivered by all parties at the Closing shall be deemed to have been taken and executed simultaneously and no proceedings shall be deemed to have been taken nor documents executed or delivered until all have been taken, executed and delivered.

(b) Seller's Deliveries. At the Closing, Seller shall deliver, or cause to be delivered, to Purchaser, the following:

(i) a Special Warranty Deed (the "**Deed**") executed by Seller, conveying to Purchaser good and marketable title in fee simple to the Property, free of all liens and encumbrances, and setting forth the applicable metes and bounds of the Property;

(ii) a FIRPTA Certificate;

(iii) originals of the plans and specifications for the Property in the possession of Seller and Seller's agents, including, but not limited to, any "as built" plans, surveys, plans and construction drawings;

(iv) any other documents as required by this Agreement or as reasonably required by the Title Company to effectuate Closing, including, without limitation, an owner's affidavit and indemnity in form and substance required by the Title Company;

(c) Purchaser's Deliveries. At the Closing, Purchaser shall deliver or cause to be delivered to Seller:

(i) the balance of the Purchase Price;

Section 8: CONDITIONS PRECEDENT TO OBLIGATIONS.

The obligation of Purchaser to purchase the Property from Seller in accordance with this Agreement is subject to satisfaction of each of the following conditions (the "**Purchaser's Conditions Precedent**"), any of which may be waived in whole or in part by Purchaser on or prior to the Closing Date. Purchaser may terminate this Agreement and receive a return of the Deposit upon the failure of any such condition.

a) Representations. Each of the representations of Seller and Purchaser contained in this Agreement shall be true and correct in all respects on the Closing Date, as though made on such date.

b) Compliance with Seller's Covenants. Seller shall have performed and complied with all of the terms, conditions and covenants required by this Agreement to be performed and complied with by Seller prior to or on the Closing Date.

c) Title Policy. Purchaser shall receive confirmation that a ALTA owner's policy of title insurance acceptable to Purchaser will be issued by the Title Company, dated the date of Closing and with policy coverage in the amount of the Purchase Price, insuring Purchaser as owner of good, marketable and indefeasible fee simple title to the land and improvements, subject only to the Permitted Exceptions.

d) The "Court Approval Date" occurring on or before July 15, 2020.

Seller's obligations to sell the Property are conditioned upon the approval of the Sale by the Bankruptcy Court.

Section 9: APPORTIONMENTS.

The following shall be apportioned between Seller and Purchaser as of 11:59 PM EST. on the day immediately preceding the Closing Date (the "**Apportionment Date**"):

(i) real estate taxes, sewer rents and taxes, water rates and charges other than those pursuant to clause (iii) below, and any other governmental taxes and charges levied or assessed against the Property (collectively, the "**Property Taxes**"), on the basis of the respective periods for which each is assessed or imposed, to be apportioned in accordance with subsection (vi) hereof;

(ii) water charges based on meter readings to be apportioned in accordance with subsection (vii) hereof;

(iii) except as otherwise set forth in this Agreement, the customs of the county in which the Property is located shall govern proration.

(vi) Property Taxes shall be apportioned on the basis of the fiscal period for which assessed. If the Closing Date shall occur either before an assessment is made or a tax rate is fixed for the tax period in which the Closing occurs, the apportionment of the Property Taxes based thereon shall be made at the Closing by applying the tax rate for the preceding year

to the latest assessed evaluation, but, after the assessment and/or tax rate for the current year is fixed, the apportionment thereof shall be recalculated and Seller or Purchaser, as the case may be, shall make an appropriate payment to the other based on such recalculation.

    (vii) If there are water meters on the Property, the unfixed water rates and charges and sewer rents and taxes if any, shall be apportioned (i) on the basis of an actual reading done on or immediately prior to the Apportionment Date, or (ii) if such reading has not been made, on the basis of the last available reading provided in such case, Purchaser shall be insured for water and sewer charges by the Title Company through the Closing Date. If the apportionment is not based on an actual current reading, then upon the taking of a subsequent actual reading, such apportionment shall be readjusted and Seller or Purchaser, as the case may be, shall promptly deliver to the other the amount determined to be due upon such readjustment. Seller shall provide water meter readings and produce same on the Closing Date.

If the computation of apportionments shows that a net amount is owed by Seller to Purchaser, such amount shall be credited against the Purchase Price payable by Purchaser on the Closing Date. If such computation shows that a net amount is owed by Purchaser to Seller, such amount shall be paid to Seller by Purchaser on the Closing Date.

Other Costs. Any other costs or charges of the Closing not specifically mentioned in this Agreement shall be paid and adjusted in accordance with local custom in the county in which the Property is located.

### Section 10: CLOSING COSTS; FEES AND DISBURSEMENTS OF COUNSEL.

Seller shall pay one-half (1/2) and Purchaser shall pay one-half (1/2) of the transfer taxes, if any, imposed upon or payable in connection to the Property and the recordation of the Deed. Seller and Purchaser shall each execute and/or swear to the returns or statements required in connection with the aforesaid taxes. All such tax payments shall be made payable directly to the order of the appropriate governmental officer or the Title Company. Purchaser shall pay the charges for recording and/or filing the Deed. Purchaser shall also pay all costs in connection with the preparation of any surveys of the Property as well as the costs of the examination of title and all title insurance policy premiums. Each of the parties hereto shall bear and pay the fees and disbursements of its own counsel, accountants and other advisors in connection with the negotiation and preparation of this Agreement and the Closing. The provisions of this Section 10 shall survive the Closing.

### Section 11: SELLER'S COVENANTS.

Seller hereby covenants that Seller will:

Maintenance of Property. Prior to the Closing Date, maintain the Property in the condition existing on the Effective Date, normal and reasonable wear and tear excepted.

Risk of Loss. Seller shall bear the risk of loss, of whatever kind and nature, associated with the Property, until the Closing.

Section 12: NOTICES.

Any notice or advice to be given or otherwise made to any party hereto shall be deemed given if in writing and delivered in person with a receipt obtained, or sent via reputable overnight courier, or via facsimile with proof of confirmation of receipt and followed by another permitted means of notice provided herein, or duly sent by certified mail, return receipt requested, postage prepaid, addressed to the respective recipient as follows:

if to Seller:

Sharon Frederick
1098 Frederick Road
Martinsburg, PA 16662

if to Purchaser:

Mark Frederick
354 Emmert Lane
Martinsburg, PA 16662

Any such address may be changed, by notice given in the manner provided herein. Any notice given by mail shall be deemed given three (3) days after mailing in the case of certified mail, upon receipt in the case of hand delivery, or overnight courier. Any notice or other communication may be given by counsel for the party giving the same.

Section 13: AS-IS

AS IS, WHERE IS, AND WITH ALL FAULTS. THE PROPERTY IS BEING SOLD "AS IS, WHERE IS", AND WITH ALL FAULTS, AND, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE AS TO THE CONDITION THEREOF. IT IS UNDERSTOOD AND AGREED THAT BUYER ASSUMES FULL AND COMPLETE RESPONSIBILITY FOR COMPLIANCE WITH ALL TITLES OF THE FEDERAL AMERICANS WITH DISABILITIES ACT ("ADA"), THE REGULATIONS PROMULGATED PURSUANT THERETO, AS WELL AS ANY AND ALL STATE OR LOCAL ACCESSIBILITY STANDARDS FOR THE BUILDINGS.

PURCHASER HEREBY RELEASES, QUIT CLAIMS AND FOREVER DISCHARGES SELLER AND ITS RESPECTIVE LICENSEES, EMPLOYEES, OFFICERS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS, FROM ANY AND ALL CLAIMS, LOSSES OR DEMANDS, INCLUDING, BUT NOT LIMITED TO, PERSONAL INJURY AND PROPERTY DAMAGE AND ALL OF THE CONSEQUENCES THEREOF, WHETHER KNOWN OR NOT, WHICH MAY ARISE FROM THE PRESENCE OF RADON, ENVIRONMENTAL CONTAMINANTS, DEFICIENCIES IN THE ON-SITE WATER SERVICE SYSTEMS SERVING THE PROPERTY, AND DEFECTS IN ANY INDIVIDUAL ON-LOT SEWAGE DISPOSAL SYSTEMS SERVING THE PROPERTY.

SELLER MAKES NO REPRESENTATION AS TO THE EXISTENCE OR NON-EXISTENCE OF ANY ENVIRONMENTAL CONTAMINANTS ON THE PROPERTY, INCLUDING BUT NOT LIMITED TO OIL, GREASE, HYDROLIC FLUID, GASOLINE, LEAD AND ANY OTHER SUBSTANCES. AT THE TIME OF THE CLOSING, BUYER ASSUMES ALL RESPONSIBILITY FOR

THE CONDITION OF THE PROPERTY AND SELLER SHALL HAVE NO LIABILITY HEREUNDER, INCLUDING THE INDEMNIFICATION PROVISIONS, FOR CLAIMS ARISING UNDER FEDERAL, STATE OR LOCAL LAW FOR ANY LIABILITY PERTAINING TO THE PROPERTY, INCLUDING BUT NOT LIMITED TO ENVIRONMENTAL CLAIMS ARISING UNDER CERCLA OR OTHER STATUTES RELATED TO CONDITIONS IN, ON OR ABOUT THE REAL PROPERTY.

Section 14: CONDEMNATION OR DESTRUCTION.

Fire and Other Casualty.

(i) Unless resulting from the acts or omissions of Purchaser or any affiliate of Purchaser, or any agent, employee or contractor of Purchaser, the risk of any loss due to loss, damage, impairment, confiscation or condemnation of the Property or any part thereof shall be upon Seller at all times prior to the Closing Date. Seller shall maintain in effect until the Closing Date all insurance policies now in effect with respect to the Property.

(ii) If, at any time prior to the Closing Date, all or any portion of the Property is destroyed or materially damaged as a result of fire or any other casualty whatsoever, Seller shall promptly give written notice thereof to Purchaser and Purchaser shall have the right, at its sole option, either (i) to terminate this Agreement and receive the return of the Deposit, or (ii) to complete Closing (without any abatement of the Purchase Price) hereunder and take possession of the Property in its damaged condition.

(iii) If Purchaser does not terminate this Agreement, the proceeds of any insurance paid between the date of this Agreement and the Closing Date shall be paid or assigned by Seller to Purchaser on the Closing Date and all unpaid claims and rights in connection with losses shall be assigned to Purchaser at the Closing without in any manner affecting the Purchase Price.

Eminent Domain.

(i) Seller covenants and warrants that it has not heretofore received any notice of any condemnation proceeding or other proceedings in the nature of eminent domain in connection with the property. In the event Seller receives any notice of any condemnation proceedings, or other proceedings in the nature of eminent domain, it will forthwith send a copy of such notice to Purchaser. Purchaser shall have the sole right in the name of Seller (or in its own name) to negotiate for, to agree to, or to contest all offers and awards.

(ii) If all or any part of the Property has been or is hereafter taken by condemnation or eminent domain, or if any such proceeding in relation to the Property has been or is hereafter commenced, or if notice of the contemplated commencement thereof has been or is hereafter given, Purchaser may, upon written notice to Seller, elect to cancel this Agreement, and in such event the Deposit shall be returned to Purchaser and neither party shall have any further liability or obligation hereunder.

(iii) If all or any portion of the Property has been or is hereafter taken or condemned or if any such proceeding in relation to the Property has been or is hereafter commenced and this Agreement is not canceled, the Purchase Price for the Property shall be

reduced by the total of any awards or damages actually received by Seller, and Seller shall, on the Closing Date, assign to Purchaser all of Seller's right, title and interest in and to any awards or damages to which Seller may have become entitled or may thereafter be entitled by reason of any exercise of the power of eminent domain or condemnation with respect to or for the taking of the property or any portion thereof.

### Section 15: ASSIGNMENT OF AGREEMENT.

Subject to approval of the Bankruptcy Court, Purchaser shall have the right and authority to assign this Agreement and all of their rights and obligations hereunder to any person, firm, corporation or other entity, and any such assignee shall assume the obligations of Purchaser and shall be entitled to all of the rights and powers of Purchaser hereunder. Seller acknowledges that Purchaser is entering into this Agreement for the benefit of a permitted nominee, being a special purpose entity formed exclusively for the purpose of acquiring the Property and owned solely by the Purchaser. At the time of Closing, Purchaser intends to assign to such permitted nominee, for no additional consideration, all of its right, title and interest in this Agreement and Purchaser has no intent to obtain legal or equitable title to the Property. Purchaser and such assignee, shall jointly and severally indemnify, defend and hold Seller harmless of and from any transfer taxes, interest, and penalties arising solely from any assignment of this Agreement.

### Section 16: DEFAULT.

By Purchaser. If Purchaser shall default in the performance of its obligation under this Agreement to close and purchase the Property, then as Seller's sole and exclusive remedy, the Escrow Agent shall deliver the Deposit to Seller as liquidated damages, for Seller's loss and damages, it being agreed that Seller's damages are difficult if not impossible to ascertain. Thereupon, this Agreement shall be terminated and both parties shall be released of further liability and obligations hereunder except those specifically provided herein which are to survive the termination of this Agreement, and Seller shall have no further right or remedy, either at law or in equity.

If Seller shall fail or refuse to proceed with the Closing hereunder and/or fail or refuse to cure any default or breach by Seller of this Agreement, Purchaser shall have the option of: (i) bringing an action for specific performance against Seller, at Seller's cost; (ii)taking such title as Seller can give without abatement of the Purchase Price, except that any existing liens or encumbrances which can be removed by the payment of money shall be paid and discharged by Seller at or prior to Closing, or (iii terminating this Agreement, in which event the Escrow Agent shall return the Deposit to Purchaser, this Agreement shall become null and void, and neither party shall have any further obligations hereunder (except such obligations as are intended to survive Closing)).

### Section 17: ESCROW AGREEMENT.

The Deposit shall be held in escrow by the Escrow Agent until the Closing or earlier termination of this Agreement in accordance with all applicable laws and regulations and subject to the following provisions:

Escrow Account. The Escrow Agent shall hold the Deposit in a non-interest bearing account. The duties of the Escrow Agent shall be determined solely by the express provisions of this Agreement

and as required by applicable laws and regulations. The Escrow Agent shall not deliver the Deposit to either party (other than payment, or delivery in accordance with the Closing or in accordance with the other provisions of this Agreement) until the following has occurred: (i) the party claiming to be entitled thereto shall have given notice of such entitlement to the Escrow Agent. (ii) the Escrow Agent shall have sent a copy of such notice to the other party, and (iii) the other party shall not have given, within ten (10) days of receipt of such notice, notice to the Escrow Agent that the claim of the first party is disputed. If the Escrow Agent receives notice within such 10-day period that the claim of entitlement is disputed, the Escrow Agent shall not pay such amounts to either party until such dispute is finally resolved by written agreement signed by both parties or by final non-appealable judgment of a court of law, and when such dispute is resolved, the Escrow Agent shall pay such funds to the party or parties entitled thereto pursuant to such final resolution.

Liability of Escrow Agent. The Escrow Agent shall not be liable for any mistake of fact or error of judgment or any acts or omissions of any kind unless caused solely by the Escrow Agent's willful misconduct or gross negligence. The Escrow Agent shall be entitled to rely on any instrument or signature believed by it to be genuine and may assume that any person purporting to give any writing, notice or instruction in connection with this Agreement is duly authorized to do so by the party on whose behalf such writing, notice or instruction is given.

Indemnity of Escrow Agent. The parties will jointly indemnify and defend the Escrow Agent for and hold it harmless against any loss, liability or expense incurred without gross negligence or willful misconduct on the Escrow Agent's part arising out of or in connection with the acceptance of, or the performance of its duties under this Agreement, as well as the costs and expenses of defending against any claim or liability arising under this Agreement.

Taxpayer Identification Numbers. Seller and Purchaser agree to promptly furnish the Escrow Agent with their respective federal taxpayer identification numbers upon demand therefor.

Section 18: MISCELLANEOUS.

Modifications. This Agreement shall not be altered, amended, changed, waived, terminated or otherwise modified in any respect or particular unless the same shall be in writing signed by or on behalf of the party to be charged therewith.

Binding Nature. This Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and permitted assigns.

Waiver. No waiver of any breach of any agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof or of any other agreement or provision herein contained. No extension of time for performance of any obligations or acts shall be deemed an extension of the time for performance of any other obligations or acts.

Headings. The headings preceding the text of the sections and subsections hereof are inserted solely for convenience of reference and shall not constitute a part of this Agreement, nor shall they affect its meaning, construction or effect.

Parties in Interest. This Agreement shall bind and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, assigns and personal representatives.

Counterparts. This Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be deemed an original.

Construction. Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it. All pronouns and nouns and any variations thereof shall be deemed to refer to masculine, feminine or neuter, singular or plural, as the identity of the parties may require.

Integration. This Agreement and the exhibits attached hereto embody the entire agreement and understanding between the parties and supersedes all prior agreements and understanding relating to the subject matter hereof. This Agreement may not be modified or discharged orally, nor may any waivers or consents be given orally, and every such modification, discharge, waiver or consent shall be in writing and signed by the party against which enforcement hereof is sought.

Conflict Between Provisions: Governing Law. If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to person or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law. This Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. The state courts of Pennsylvania and federal courts located in Blair County, Pennsylvania shall have exclusive jurisdiction to determine any dispute arising out of this Agreement.

Brokers. Each party hereby represents and warrants to the other that there was no broker, finder or person acting as such in any way instrumental or having any part in bringing about this transaction.

[SIGNATURE PAGE FOLLOWS]

NOW THEREFORE, the parties hereto have duly executed this Purchase and Sale Agreement as of the Effective Date.

SELLER:

_____
Larry Frederick

_____
Sharon Frederick

PURCHASER:

_____
Mark A. Frederick

_____
Megan E. Frederick

ESCROW AGENT:

McQUAIDE BLASKO INC.

_____

By: _____
Name: Sean M Burke
Title: President

EXHIBIT A

(PROPERTY DESCRIPTION)

Blair County Tax Parcel No. 20-12-1