**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | Bankruptcy No. 18-70870-JAD |
| LARRY FREDERICK and SHARON FREDERICK, | Chapter 11 |
|     Joint Debtors. | Related to Doc. No. 184 |
| LARRY FREDERICK and SHARON FREDERICK, | |
|     Movants, | |
| v. | Hearing Date:  March 16, 2021 at 10:00 am |
| M&T BANK, THE UNITED STATES OF AMERICA FARM SERVICE AGENCY, CARGILL, INC., SUSQUEHANNA COMMERCIAL FINANCE, INC., GROWMARK FS, LLC, FS FINANCIAL SERVICES, LLC, WELLS FARGO VENDOR FINANCIAL SERVICES, LLC, BLAIR COUNTY TAX CLAIM BUREAU, PENNSYLVANIA DEPARTMENT OF REVENUE, AND THE INTERNAL REVENUE SERVICE, | Response Deadline:  February 16, 2021 |
|     Respondents. | |

**GROWMARK FS, LLC AND FS FINANCIAL
SERVICES, LLC'S RESPONSE AND LIMITED OBJECTION TO
JOINT DEBTORS' MOTION FOR SALE OF REAL PROPERTY AND PERSONAL
PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

GROWMARK FS, LLC ("Growmark FS") and FS Financial Services, LLC ("FS

Financial") (unless otherwise noted, together "Growmark"), files this Response and Limited

Objection to Joint Debtors' Motion for Sale of Real Property and Personal Property Free and Clear of All Liens, Claims and Encumbrances.

## BACKGROUND

### I.    Growmark's Secured Claim.

1.    Growmark extended secured input and seed financing to the joint debtors, Larry and Sharon Frederick (the "Joint Debtors"), in connection with their dairy farm operations, as evidenced by those certain Note/Security Agreements dated October 21, 2016 (the "2016 NSA") and October 16, 2017 (the "2017 NSA").  (Copies of the 2016 and 2017 NSA's are attached hereto and incorporated herein as Exhibits "A" and "B," respectively.)

2.    Under the 2016 and 2017 NSA's, the Joint Debtors granted to Growmark a security interest in and to all of their personal property, including, without limitation, all accounts, crops, livestock, farm products, machinery, equipment, seed, fertilizer, harvested and stored grain, milk and other supplies or products used in their dairy farm operations, and all products and proceeds derived therefrom (the "Collateral").

3.    The Joint Debtors defaulted on their obligations under the 2016 and 2017 NSA's (the "Defaults").

4.    Growmark's secured claim and security interest in the Collateral is junior only to: (i) the United States Department of Agriculture, Farm Service Agency ("FSA"), as evidenced by properly filed UCC Financing Statements No. 2011042803932, dated April 28, 2011, continued by No. 2016031801432, dated March 18, 2016 (the "Growmark Financing Statements"); and (ii) $100,000 of indebtedness in favor of M&T Bank ("M&T") as set forth in detail below.  (A copy of a UCC Search Report identifying Growmark's perfected priority security interest is attached hereto and incorporated herein as Exhibit "C.")

5.      Growmark's secured claim and perfected priority security interest in the Collateral is ahead of all but $100,000 of the secured indebtedness owed to M&T Bank.

6.      Pursuant to a superseding "General Subordination Agreement" entered into between Growmark and M&T, dated July 26, 2017 (the "2017 Partial Subordination Agreement"), which was prepared by M&T and is an M&T form document (CLB-109-PA (9/12)), Growmark's secured lien is partially subordinated to M&T's interests to the limited extent of $100,000.00. 2017 Subordination Agreement § 1(a).[1]  (A copy of the 2017 Partial Subordination Agreement is attached hereto and incorporated herein as Exhibit "D.")

7.      The 2017 Partial Subordination Agreement, which expressly incorporates the Growmark UCC Financing Statements, contains an integration clause and provides that "it contains the entire agreement between [M&T] and [Growmark] with respect to this subordination and supersedes every course of dealing, other conduct, oral agreement and representation previously made by [M&T]." (2017 Partial Subordination Agreement § 16(a).)  In describing the partially subordinated obligations, the 2017 Partial Subordination Agreement identifies the exact same loans as those listed in the prior superseded agreements between M&T and Growmark. (*Id.* § 1(b) & Schedule A.)

**II.    Joint Debtors' Bankruptcy Case.**

8.      On December 20, 2018, the Joint Debtors filed for relief under chapter 11 of the United States Bankruptcy Code.

---

[1] M&T admits the binding force of the agreed upon 2017 Partial Subordination Agreement.  (*See* Doc. No. 124, at ¶¶ 2–3.)

9.      Based upon the Defaults and the funds owed to Growmark, Growmark filed proofs of claim at Claim No. 19 and Claim No. 20 on the Claims Register, evidencing the secured claims of Growmark and FS Financial in the amount of $128,101.36 and $132,981.57, respectively.

10.     On January 8, 2021, the Joint Debtors filed their Motion to Approve Stipulation and Consent Order Settling Contested Matters Between the Debtors and M&T Bank and Establishing Asset Sale Process (the "Motion to Approve"), which, *inter alia*, provides for a "sale process of all the Debtors' assets that are encumbered by a first position lien in favor of M&T or the FSA."  (Doc. No. 172, at ¶ 21.)

11.     These assets include three parcels of real estate, identified in the Motion to Approve as 1098 Frederick Road and 1219 Frederick Road (together, the "Frederick Road Properties") and a property located on Cove Lane, along with farming equipment and livestock located on the 1098 Frederick Road property only.  (Doc. No. 172 at p. 6.)  Notably, the Motion to Approve does not identify milking equipment, or any personal property located on either the 1219 Frederick Road property or Cove Lane.

12.     On January 27, 2021, the Joint Debtors filed the Motion for Sale of Real Property and Personal Property Free and Clear of All Liens, Claims and Encumbrances (the "Sale Motion") to initiate the sale process as outlined in the Motion to Approve.  (Doc. No. 184.)

13.     The Sale Motion lists Growmark as a creditor holding a lien, claim, or encumbrance against the assets to be sold.

14.     As outlined in the Sale Motion and Motion to Approve, the stipulation between the Joint Debtors, FSA, and M&T (the "Stipulation")[2] proposes a stalking horse bid price of

---

[2] Neither the Joint Debtors nor M&T invited Growmark to participate in the substantive negotiations which preceded the filing of the Motion.

$2,100,000 (the "Purchase Price") for the Frederick Road Properties and farming equipment and livestock on the 1098 Frederick Road property only, and a separate bid of $850,000 for Cove Lane.

15.    The Stipulation allocates the Purchase Price as follows:

a.    $1,575,000 for 1098 Frederick Road;

b.    $525,000 for 1219 Frederick Road; and

c.    For each parcel, 87.54% of the price will be allocated to real estate and 12.46% allocated to personal property, which includes the farming equipment and livestock on the 1098 Frederick Road property only.

16.    The Stipulation also provides that "unless the Court orders otherwise at the Sale Hearing, the purchaser of the Frederick Road Properties and the Personal Property shall conditionally assume the prepetition secured debt of Growmark and such assets shall remain subject to whatever, if any, valid, perfected and first priority lien exists in favor of Growmark but any such lien and assumed debt shall be automatically divested and rendered null and void as of the Sale Date in the event a court of competent jurisdiction, including this Court, determines that any such lien is subordinate to the liens in favor of M&T Bank or otherwise subject to avoidance or disallowance under Section 506 or any other provision of the Bankruptcy Code." The Joint Debtors did not seek Growmark's approval of these proposed provisions.

17.    In turn, the Sale Motion also provides that the proposed sale of the Frederick Road Properties and Personal Property includes the assumption of the Joint Debtors' obligation to Growmark.

18.    The Stipulation does not describe how the 87.54%/12.46% allocation between real property and personal property was determined. Growmark was not consulted with respect to this allocation, and it is unclear how the Joint Debtors may have arrived at these figures and the Purchase Price. Further, the Joint Debtors' proposed allocation for the sale of farming equipment

*and* livestock is $266,660.00, far below the $500,000.00 equipment-only allocation in their previous Motion for Sale of Property.

19.     Moreover, the Sale Motion does not identify all of the Joint Debtors' personal property, including, without limitation, all milking equipment and machinery.   To that end, Growmark is proceeding to retain an appraiser to conduct an independent review of the Joint Debtors' real property and personal property.   To the extent an agreement on valuation is not reached by the parties, this Court should determine the relative values of all of the property being sold.  This is the only way to ensure fundamental fairness for all parties.

20.     Growmark does not oppose a sale of the Frederick Road Property, Cove Lane, and Collateral; however, Growmark objects to the Sale Motion to the extent that it incorporates the Stipulation that: (i) attempts to subordinate Growmark's lien to that of M&T in an amount greater than $100,000.00;   (ii) allocates the value of the Frederick Road Property, Cove Lane, and Collateral at 87.54% to real estate and 12.46% to the personal property; (iii) fails to identify all the Joint Debtors' personal property in which Growmark has a secured interest; and (iv) undervalues the Joint Debtors' personal property in which Growmark has a secured interest.

## BASIS FOR RESPONSE AND LIMITED OBJECTION

**I.      Based upon the 2017 Partial Subordination Agreement, Growmark's secured claim is senior to that of M&T, except in the amount of $100,000.00.**

21.     It is undisputed that the FSA lien is senior to that of Growmark and M&T.

22.     However, based upon the 2017 Partial Subordination Agreement, Growmark's secured claim and perfected security interest in the Collateral is behind the FSA only and superior to M&T's interest, except for the $100,000.00 as provided for in such agreement.

23.     By its express terms, the superseding 2017 Partial Subordination Agreement, which M&T drafted and admits is binding, fully displaces any and all prior subordination agreements between M&T and Growmark.

24.     Under generally applicable principles of Pennsylvania contract law, the plain language of the superseding 2017 Partial Subordination Agreement governs and, as a matter of law, Growmark's secured lien position is superior to that of M&T—apart from the $100,000.00.

25.     Thus, except for that $100,000.00, Growmark has a perfected priority security interest in the Collateral that is senior to M&T's interest.

26.     Section 510(a) of the Bankruptcy Code provides that "[a] subordination agreement in enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law."  11 U.S.C. § 510(a); *see also In re Stambaugh,* 532 B.R. 572, 577 (Bankr. M.D. Pa. 2015) ("Pennsylvania, and virtually all other states, allow for subordination by agreement" and "where its language is plain and unambiguous, the terms of a subordination agreement are fully enforceable in a bankruptcy case."); *In re Mihalko*, 87 B.R. 357, 364 (Bankr. E.D. Pa. 1988) ("Prepetition subordination agreements have long been enforceable in bankruptcy.").

27.     Further, general Pennsylvania common law contract principles are applied in construing a subordination agreement.  *Stambaugh*, 532 B.R. at 577: *Conshohocken Fed. Sav. & Loan Ass'n v. Period & Country Homes, Inc*., 430 A.2d 1173, 1177 (Pa. Super. 1981).[3]

---

[3] The 2017 Partial Subordination Agreement is governed by Pennsylvania law.  (*See* 2017 Partial Subordination Agreement § 18.)

28.     Based upon governing case law, the 2017 Partial Subordination Agreement should be interpreted to give effect to the intent of the parties at the time the contract was entered. *Stambaugh*, 532 B.R. at 577.

29.     Moreover, because the language of the 2017 Partial Subordination Agreement is clear and unambiguous, the parties' intent should be determined from its express language. *Id*.

30.     Importantly, the 2017 Partial Subordination Agreement was drafted by M&T. "Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter." *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462 (Pa. 2006) (citation omitted).

31.     The plain language of the 2017 Partial Subordination Agreement clearly expresses the parties' intention to place Growmark's lien position ahead of M&T's interest as to "any and all obligations owed by the Joint Debtors to Growmark, other than in the amount of $100,000.00." (Partial Subordination Agreement § 1(a) & (b).)

32.     M&T chose the wording and drafted the 2017 Partial Subordination Agreement for the parties' execution.  As such, its terms and conditions must be construed against M&T.  *In re: Edge Pa., LLC*, 580 B.R. 120, 127 (Bankr. M.D. Pa. 2017) (subordination agreement construed against the drafter); *Stambaugh*, 532 B.R. at 577 (enforcing subordination agreement against PNC Bank because it chose the wording of the subordination agreement at issue).

33.     Simply stated, M&T would not have prepared and executed the 2017 Partial Subordination Agreement if it did not intend it to mean what it clearly says.

34.     The 2017 Partial Subordination Agreement expressly provides that it supersedes and extinguishes all prior subordination agreements between the parties, stating that it "contains the entire agreement between [M&T] and [Growmark] with respect to this subordination, and

supersedes every course of dealing, other conduct, oral agreement and representation previously made by [M&T]."[4]  (2017 Partial Subordination Agreement § 16(a).)

35.    Equally dispositive, in describing the partially subordinated obligations, the 2017 Partial Subordination Agreement identifies the exact same loans as those listed in the prior superseded agreements between M&T and Growmark.  (*Id.* § 1(b) & Schedule A, listing the identical loan numbers.)

36.    In other words, the binding, integrated 2017 Partial Subordination Agreement discharges all prior inconsistent subordination agreements between the parties.  *See Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1404 (3d Cir. 1991) ("[a] binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 213 (1979); *see also Security Pacific Mortg. & Real Estate Servs., Inc. v. Canadian Land Co. of America, N.V.*, 690 F. Supp. 1214, 1222 (S.D.N.Y. 1988) (a subsequent subordination agreement obviously supersedes a prior agreement between the parties)).

37.    Accordingly, the plain and unambiguous language of the 2017 Partial Subordination Agreement demonstrates the specific intent of the parties to subordinate only $100,000.00 of Growmark's priority security interest to the junior lien position of M&T.

---

[4] Further, the patent textual inconsistency between the 2017 Partial Subordination Agreement and the prior agreements relied upon by M&T concerning the extent and amount of the subordination is in and of itself clear evidence that the 2017 Partial Subordination Agreement supersedes and displaces the others.  *See Jaludi v. Citigroup*, 933 F.3d 246, 252-53 (3d Cir. 2019) (a 2011 arbitration agreement, the plain language of which was patently inconsistent with a prior 2009 arbitration agreement between the parties, necessarily superseded the 2009 agreement).

38.    Therefore, other than the limited amount of $100,000.00, any security interest or lien claimed by M&T is subordinate and junior to Growmark's priority security interest in the Collateral, and Growmark should receive proceeds from any sale according to its lien position.

**II.    The Court is not bound by the allocation of the Purchase Price set forth in the Stipulation.**

39.    As stated above, the Stipulation allocates the Purchase Price as follows:

a.    $1,575,000 for 1098 Frederick Road;

b.    $525,000 for 1219 Frederick Road; and

c.    For each parcel, 87.54% of the price will be allocated to real estate and 12.46% allocated to personal property, which includes the farming equipment and livestock on the 1098 Frederick Road property only.

40.    However, the Stipulation fails to provide any basis for such allocation, and the Court should use its discretion to make an independent determination of the respective values of the Frederick Road Properties and the Collateral (including all the Joint Debtors' personal property).

41.    "Because the evaluation of property is less than an exact science, the Court is given wide latitude in determining value." *In re 210 Ludlow St. Corp.*, 455 B.R. 443, 447 (Bankr. W.D. Pa. 2011) (citing *In re Weichey*, 405 B.R. 158, 164–65 (Bankr. W.D. Pa. 2009)).  The Court is not bound by the stipulation of the Joint Debtors and M&T Bank as to the value of the Collateral, especially when Growmark objects to the stipulation as to value reached by M&T and the Joint Debtors.  *In re Heritage Highgate, Inc.*, 679 F.3d 132, 141 (3d Cir. 2012) (emphasizing the bankruptcy court's discretion in choosing a standard of valuation on a case-by-case basis); *see also In re Body Transit, Inc.*, 619 B.R. 816, 828 (Bankr. E.D. Pa. 2020) (rejecting the debtor's valuation methodology based on the court's interpretation of the same debtor's proposed use of the asset).

42.    Even if the parties to the Stipulation had provided an appraisal of the Frederick Road Property and the Collateral, the Court is not bound by such appraisal and "may form its own opinion as to the value of property in bankruptcy proceedings." *210 Ludlow St. Corp.*, 455 B.R. at 447 (citing *In re Patterson*, 375 B.R. 135, 144 (Bankr. E.D. Pa. 2007)).

43.    Growmark submits that the value of the Collateral is more than the valuation provided for in the Stipulation, is proceeding to engage an independent appraiser to conduct an onsite review, and will be prepared to offer evidence to that effect at an evidentiary hearing.

44.    As such, Growmark requests that this Court independently determine the value of the Frederick Road Properties and Collateral and allocate the proceeds from the sale of the same accordingly.

WHEREFORE, GROWMARK FS, LLC and FS Financial Services, LLC respectfully request that this Honorable Court enter an Order: (a) determining that Growmark holds the second priority lien position as to the Collateral, with the exception of $100,000.00 that is subordinated to M&T; (b) determining the values of the Frederick Road Properties and Collateral and appropriate allocation of the same; (c) directing that the proceeds of any approved sale of the Joint Debtors' property and Collateral be paid in accordance with the secured creditors' lien priority; and (d) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  February 16, 2021                TUCKER ARENSBERG, P.C.

*/s/ Ryan James*
Ryan James
Pa. I.D. No. 82799
rjames@tuckerlaw.com
Michael A. Shiner
Pa. I.D. No. 78088
mshiner@tuckerlaw.com
Maribeth Thomas

Pa. I.D. No. 208376
mthomas@tuckerlaw.com
1500 One PPG Place
Pittsburgh, Pennsylvania  15222
Phone:  (412) 566-1212

*Counsel to GROWMARK FS, LLC and FS Financial Services, LLC*